301 S.E.2d 169

**U.S. LIFE CREDIT CORP.**

v.

**Robert A. WILSON.**

**No. 15494.**

Supreme Court of Appeals of West Virginia.

Dec. 15, 1982.

Rehearing Denied March 30, 1983.

**539**

Michael L. Solomon, Solomon & Solomon, Morgantown, for appellee.

Betsy Hutchings, Legal Aid Soc., Morgantown, for appellant.

HARSHBARGER, Justice:

On July 16, 1979, Robert Wilson borrowed $1,380.20 from U.S. Life Credit Corporation and signed a combined note, security agreement, and disclosure statement. After several payments, Wilson defaulted. U.S. Life sued him in the Circuit Court of Monongalia County to recover the balance due. The circuit court granted summary judgment for U.S. Life, and denied Wilson's cross-motion for summary judgment on his counterclaims alleging violations of federal and state consumer protection laws. Wilson then appealed. We affirm the trial court's ruling on the federal law question, but reverse the state law ruling and remand with directions.

■ The first of Wilson's two contentions is that the trial court erred in ruling that U.S. Life did not violate Section 129(a)(7) of the Truth-in-Lending Act, 15 U.S.C. § 1639(a)(7), and Section 226.8(b)(4) of the Federal Reserve Board's Regulation Z, 12 C.F.R. § 226.8(b)(4), which respectively state as follows:

129(a) Required disclosures by creditor. . Any creditor making a consumer loan or otherwise extending consumer credit in a transaction which is neither a consumer credit sale nor under an open end consumer credit plan shall disclose each of the following items, to the extent applicable:

.     .     .     .     .

(7) The default, delinquency, or similar charges payable in the event of late payments....

Regulation Z, 12 C.F.R. § 226.8(b)(4) states:

(b) *Disclosures in sale and nonsale credit.* In any transaction subject to this section, the following items, as applicable, shall be disclosed:

.     .     .     .     .

(4) The amount, or method of computing the amount, of any default, delinquency, or similar charges payable in the amount of late payments.

U.S. Life's printed contract states:

DEFAULT CHARGE: If any scheduled payment remains unpaid for more than 10 consecutive days, including Sundays and holidays, after it is due, Lender may: (1) charge and collect a default charge in an amount, not exceeding $5, which is 5% of the unpaid amount of the installment, but in any event, not less than $1 or (2) *unilaterally charge and collect a deferment charge as provided by Section 46A-3-114 of the West Virginia Consumer Credit and Protection Act.* (Emphasis supplied.)

Wilson's contention is that the second portion of the contractual provision is a default charge subject to the previously quoted disclosure requirements of federal law. U.S. Life contends that the provision is a deferral charge rather than a default charge for which no disclosure is required until the deferral charges are actually im-

posed. 12 C.F.R. § 226.8(*l*).[1] *See* Annot., 34 A.L.R.Fed. 467 (1977).

We agree with the creditor and affirm the trial court's ruling. The fact that the provision is under a paragraph headed, Default Charge, is not dispositive. The contract by its terms permits a deferment charge to be imposed in the event payments are more than ten days late as is authorized by W.Va.Code, 46A-3-114. The agreement is a near mirror image of the language of W.Va.Code, 46A-3-114(3):

> The parties may agree in writing at the time of a precomputed consumer credit sale or consumer loan, refinancing or consolidation that if an installment is not paid within ten days after its due date as originally scheduled or as deferred, the seller or lender may unilaterally grant a deferral and make charges as provided in this section. No deferral charge may be made for a period after the date on which the seller or lender elects to accelerate the maturity of the agreement.

Because the challenged provision relates to a deferral charge rather than a default charge, the creditor did not violate federal law.

Wilson's second counterclaim presents an important question concerning the civil liability of creditors who violate the West Virginia Consumer Credit and Protection Act, W.Va.Code, 46A-1-101, *et seq.* [1974]. The issue is, did the legislature in enacting W.Va.Code, 46A-5-101(1), intend to create a cause of action for West Virginia consumers who have had unconscionable contract terms imposed upon them as a condition for obtaining credit?

■ Wilson's counterclaim is predicated on the following provision of U.S. Life's form agreement:

> The undersigned hereby jointly and severally authorize the Lender, its agents or assigns to communicate in any manner with any person, firm, corporation or governmental agency for any purpose in connection with the making or collection of the loan evidenced by this note and also waive the right to enforce any claim, action or cause of action which the undersigned may hereafter have for violation of right of privacy by reason of such communications.

U.S. Life for good reason does not argue that this provision is consistent with public policy. The provision was unconscionable when it was entered into and its inclusion in the contract was a patent violation of W.Va.Code, 46A-2-121.[2] It purports to waive Wilson's statutory right to be free from unreasonable publication of his indebtedness, W.Va.Code, 46A-2-126,[3] and was included in the contract despite the presence of W.Va.Code, 46A-1-107, that provides that "a consumer may not waive or agree to forego rights or benefits un-

---

**1.** 12 C.F.R. § 226.8(*l*) provides:

"(*l*) Deferrals or extensions. In the case of an obligation other than an obligation upon which the amount of the finance charge is determined by the application of a percentage rate to the unpaid balance, if the creditor imposes a charge or fee for deferral or extension, the creditor shall disclose to the customer

(1) The amount deferred or extended;

(2) The date to which, or the time period for which payment is deferred or extended; and

(3) The amount of the charge or fee for the deferral or extension."

**2.** W.Va.Code, 46A-2-121, states:

"(1) With respect to a transaction which is or gives rise to a consumer credit sale or consumer loan, if the court as a matter of law finds:

"(a) The agreement or transaction to have been unconscionable at the time it was made, or to have been induced by unconscionable con-

duct, the court may refuse to enforce the agreement, or

"(b) Any term or part of the agreement or transaction to have been unconscionable at the time it was made, the court may refuse to enforce the agreement, or may enforce the remainder of the agreement without the unconscionable term or part, or may so limit the application of any unconscionable term or part as to avoid any unconscionable result."

**3.** W.Va.Code, 46A-2-126 states:

"No debt collector shall unreasonably publicize information relating to any alleged indebtedness or consumer. Without limiting the general application of the foregoing, the following conduct is deemed to violate this section:

"(a) The communication to any employer or his agent before judgment has been rendered of any information relating to an employee's indebtedness other than through proper legal action, process or proceeding...."

der" the Act unless the Act expressly permits such a waiver. In addition, the clause required Wilson to waive any right of action for any violation of his right of privacy arising from the creditor's communications regarding his indebtedness. In addition, the presence of the clause works to deceive consumers into believing that U.S. Life could with the law's blessing communicate with his employer to collect the debt. Viewed from this perspective, the clause is a collection device approaching a threat to take action prohibited by the Act.

■ The critical question is whether Wilson has a cause of action for actual damages and civil penalties under W.Va.Code, 46A–5–101(1). The trial court concluded that Wilson failed to state a claim upon which relief could be granted. As pertinent here, Section 101(1) states:

(1) If a creditor has violated the provisions of this chapter applying to collection of excess charges (§ 46A–1–104), security in sales and leases (§ 46A–2–107), disclosure with respect to consumer leases (§ 46A–2–111), receipts, statements of account and evidences of payment (§ 46A–2–114), limitations on default charges (§ 46A–2–115), assignment of earnings (§ 46A–2–116), authorizations to confess judgment (§ 46A–2–117), *illegal, fraudulent or unconscionable conduct* (§ 46A–2–121), any prohibited debt collection practice (§§ 46A–2–123 through 46A–2–129), or restrictions on interest in land as security, assignment of earnings to supervised lender, security agreement on household furniture for benefit of supervised lender, and renegotiation by supervised lender of loan discharged in bankruptcy (§ 46A–4–109), the consumer has a cause of action to recover actual damages and in addition a right in an action to recover from the person violating this chapter a penalty in an amount determined by the court not less than one hundred dollars nor more than one thousand dollars. (Emphasis added.)

As always in matters involving statutory construction, legislative intent is the dominant consideration. Here, that intent is expressed by clear and unambiguous language, and it is thus not necessary for us to rely on canons of statutory construction calling for liberal construction of remedial legislation to effectuate legislative intent. *See, e.g., Gibson v. Rutledge,* 171 W.Va. 164, 298 S.E.2d 137 (1982) (unemployment compensation statute).

Section 101(1), by its terms, creates a cause of action for actual damages and a civil penalty when a creditor violates any of the provisions of the Act enumerated therein. U.S. Life asserts that only when a creditor engages in "illegal, fraudulent or unconscionable *conduct*" inducing an unconscionable agreement or contract term violating W.Va.Code, 46A–2–121, is a creditor subject to an action under Section 101(1). The creditor also asserts that the only penalty or remedy for inclusion of an unconscionable term in a contract is found in W.Va.Code, 46A–2–121, which permits a court to, among other things, not enforce the unconscionable term. These arguments, however, cannot withstand even minimal analysis.

Other enumerated sections of the Act included in Section 101(1) have a self-contained remedy, yet civil penalties are nevertheless imposed. W.Va.Code, 46A–2–107(3), for example, provides that any security interest taken in violation of that section is void. *See also,* W.Va.Code, 46A–2–115; 46A–2–116(3); Code, 46A–2–117; Code, 46A–4–109(1), (2), (3).

The legislature in enacting the West Virginia Consumers Credit and Protection Act, W.Va.Code, 46A–1–101, *et seq.,* in 1974, sought to eliminate the practice of including unconscionable terms in consumer agreements covered by the Act. To further this purpose the legislature, by express language of W.Va.Code, 46A–5–101(1), created a cause of action for consumers and imposed civil liability on creditors who include unconscionable terms that violate W.Va.Code, 46A–2–121 in consumer agreements.

Section 101(1) unmistakably reflects the legislature's intent to eliminate those violations of the Act therein specified by giving the consumer not only a private cause of

action to recover actual damages, but in addition, a right to recover a penalty in an amount set by the court at not less than $100 nor more than $1,000. The consumer may institute an action within the time specified in Section 101(1), or may assert the rights granted by the Act as a defense, set off or counterclaim without regard to any statute of limitations. W.Va.Code, 46A–5–102. Willful violation of the Act subjects creditors to criminal penalties. W.Va.Code, 46A–5–103.

As we observed in *Thomas v. Firestone Tire & Rubber Co.,* 164 W.Va. 763, 266 S.E.2d 905, 909 (1980), the passage of the Act represented a "recognition by the legislature of abuses in consumer credit transaction practices" and we noted that the Act had "broad remedial purposes." *See* Cardi, *West Virginia Consumer Credit and Protection Act,* 77 W.Va.L.Rev. 401 (1975).

Other provisions of the Act support our conclusion that the legislature meant to eliminate the practice of including unconscionable and illegal contract terms in consumer credit agreements. Article 7 creates the consumer protection division of the attorney general's office. W.Va.Code, 46A–7–101. The attorney general is authorized to bring a civil action to restrain persons from violating the Act and for other appropriate relief. W.Va.Code, 46A–7–108. Significantly, the attorney general is vested with the express statutory authority to seek injunctive relief "to restrain a creditor or a person acting in its behalf from engaging in a course of: (a) Making or enforcing unconscionable terms or provisions of consumer credit sales or consumer loans...." Code, 46A–7–109.

If the legislature had intended to subject creditors to civil liability only where unconscionable or illegal conduct induced an unconscionable contract, it could have said so. The Act grants rights and benefits to consumers and provides that these rights and benefits cannot be waived unless the Act so provides. W.Va.Code, 46A–1–107. When a creditor exacts a waiver of a right guaranteed by the Act as a condition of a consumer credit sale or loan, we think the legislature intended to make such creditor subject to civil liability.

The judgment of the trial court is, therefore, affirmed in part and reversed in part, and the case is remanded with directions that the trial court enter summary judgment for the appellant on his state law claim and determine the amount of the civil penalty provided for by law, W.Va.Code, 46A–5–101(1).

Affirmed in part; reversed in part.