451 S.E.2d 57

Larry DAVENPORT, Plaintiff
Below, Appellant,

v.

Cathy S. GATSON, Clerk of the Circuit
Court of Kanawha County; The Board
of Review of Employment Security; An-
drew N. Richardson, Commissioner of
the West Virginia Department of Em-
ployment Security; and Fayette County
Board of Education, Defendants Below,
Appellees.

No. 22222.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 27, 1994.

Decided Nov. 2, 1994.

William B. McGinley, Charleston, for ap-
pellant.

Erwin L. Conrad, Conrad & Clay, Fayette-
ville, for appellees.

**118**

MILLER, Justice:[1]

In this unemployment security appeal, we are asked to consider whether a substitute teacher is entitled to obtain benefits during the summer school vacation period. At the administrative level and on appeal to the Circuit Court of Kanawha County, the appellant's claim was held to be barred by virtue of W.Va.Code, 21A–6–15(2)(a) (1987). This subsection regulates the payment of benefits to teachers by limiting their eligibility between academic years.[2]

The appellant, Mr. Davenport, worked as a substitute teacher for the Fayette County Board of Education during the 1991–92 school year.[3] He was employed for thirty-six days that school year. At the end of the school year, he was offered another substitute teaching contract, which he signed on August 5, 1992. He filed for unemployment benefits, claiming he had no reasonable assurance that he would obtain work as a substitute, and thus was not barred from receiving benefits.

Mr. Davenport had worked as a substitute teacher in the 1991–92 school year and was offered a similar substitute teacher contract for the 1992–93 school year. The linchpin of his argument is that the substitute teaching contract did not contain any definite assurance as to the number of days that the Board would call him to work as a substitute teacher. This same situation existed in his 1991–92 substitute teacher's contract.

W.Va.Code, 18A–2–3 (1969), which relates to the county superintendent's right to hire substitute teachers, is designed with considerable flexibility and is not circumscribed by any work day quota for substitute teachers.[4] This flexibility is further demonstrated in the statutory pay scale given to substitute teachers under W.Va.Code, 18A–4–7 (1990), which is based on the number of days employed.[5] Moreover, in *Triggs v. Berkeley County Board of Education*, 188 W.Va. 435, 425 S.E.2d 111 (1992), we recognized that under W.Va.Code, 18A–4–7a, a substitute teacher does not gain seniority unless that teacher has worked one hundred thirty-three days during one school year.[6] We are not cited,

1. Pursuant to an Administrative Order entered by this Court on September 13, 1994, retired Justice Thomas B. Miller was recalled for the September 1994 term because of the physical incapacity of Chief Justice W.T. Brotherton, Jr.

2. W.Va.Code, 21A–6–15(2)(a) (1987) provides this exception:

   With respect to services in an instructional, research or principal administrative capacity for an educational institution, benefits shall not be paid based on such services for any week commencing during the period between two successive academic years or terms, or during a similar period between two regular but not successive terms, or during a period of paid sabbatical leave provided for in the individual's contract, to any individual if such individual performs such services in the first of such academic years or terms and if there is a contract or a reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of such academic years or terms or after such holiday or vacation period.

3. He had also worked as a full-time teacher during the 1990–91 school year. However, his full-time job was abolished because of program changes made by the Fayette County Board of Education.

4. W.Va.Code, 18A–2–3 (1969), states:

   The county superintendent, subject to approval of the county board, shall have authority to employ and assign substitute teachers to any of the following duties: (a) To fill the temporary absence of any teacher or an unexpired school term made vacant by resignation, death, suspension or dismissal; (b) to fill a teaching position of a regular teacher on leave of absence, and (c) to perform the instructional services of any teacher who is authorized by law to be absent from class without loss of pay, providing such absence is approved by the board of education in accordance with the law. Such substitute shall be a duly certified teacher.

5. W.Va.Code, 18A–4–7 (1990), states:

   The pay of a substitute teacher shall not be less than eighty percent of the daily rate of the state basic salary paid to teachers: Provided, That any substitute teacher who teaches in excess of ten consecutive instructional days in the same position shall, thereafter, not be paid less than eighty percent of the daily rate of the state advanced salary based upon teaching experience: Provided, however, That any substitute teacher who teaches in excess of thirty days in the same position shall be paid the daily rate of the advanced salary, within that teacher's county.

6. W.Va.Code, 18A–4–7a (1993), states, in pertinent part:

nor have we found, any statute that mandates that substitute teachers be recognized to have a certain number of days of employment in an academic year. The very nature of substitute work militates against the contract providing a fixed number of days of employment.

The provision of our unemployment compensation statute at issue in this case is not unique. A number of jurisdictions have similar statutes. *See generally* 76 Am.Jur.2d Unemployment Compensation § 70 (1992). Several rationales have been offered for this denial of benefits. The Michigan court in *Grand Rapids Public Schools v. Falkenstern,* 168 Mich.App. 529, 537, 425 N.W.2d 128, 132 (1988), stated that its statute "operates to bar recovery during those periods when teachers traditionally do not work...." It also added, quoting from *Paynes v. Detroit Board of Education,* 150 Mich.App. 358, 368, 388 N.W.2d 358, 362 (1986), that "... [t]his section is designed to safeguard the stability of school district employment funds...." *Grand Rapids Public Schools,* 168 Mich.App. at 537, 425 N.W.2d at 537. Another reason was advanced by the Pennsylvania court in *Coolidge v. Commonwealth Unemployment Compensation Board of Review,* 92 Pa. Cmwlth. 392, 394, 499 A.2d 409, 410 (1985):

> The rationale for precluding teachers from collecting unemployment benefits during the summer is that teachers can anticipate and prepare for the lack of work, therefore, they are not truly unemployed or suffering economic insecurity during the summer vacation. (Citations omitted.)[7]

While we recognized that unemployment compensation statutes should be liberally construed in favor of the claimant, syllabus, *Mercer County Board of Education v. Gatson,* 186 W.Va. 251, 412 S.E.2d 249 (1991),[8] we are not at liberty to ignore the plain language of a statute. As we explained in syllabus point 1 of *State ex rel. Estes v. Egnor,* 191 W.Va. 36, 443 S.E.2d 193 (1994):

> " ' "When a statute is clear and unambiguous and the legislative intent is plain the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Point 1, syllabus, *State ex rel. Fox v. Board of Trustees of the Policemen's Pension or Relief Fund of the City of Bluefield, et al.,* 148 W.Va. 369 [135 S.E.2d 262 (1964)].' Syllabus Point 1, *State ex rel. Board of Trustees v. City of Bluefield,* 153 W.Va. 210, 168 S.E.2d 525 (1969)." Syllabus Point 1, *West Virginia Radiologic Technology Board v. Darby,* 189 W.Va. 52, 427 S.E.2d 486 (1993).

We find that the language of W.Va. Code, 21A–6–15(2)(a) denies unemployment benefits during the summer to a substitute teacher if such individual performs services in the first academic year or term and is offered a contract or a reasonable assurance that such individual will perform services in any such capacity for any academic institution in the second of such academic years.[9]

The appellant's main contention is that the substitute teachers' contract contains no reasonable assurance regarding the amount of work to be performed. He points to the language in paragraph 4, which states: "Ap-

---

7. The relevant language of 43 P.S. § 402.1(1), the Pennsylvania statute quoted in *Coolidge* provides that:

   if such individual performs such services in the first of such academic years or terms and if there is a contract or reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of such academic years or terms. (Footnotes omitted.) *Id.* at 394, 499 A.2d. at 410.

8. The syllabus of *Mercer County Board of Education, supra,* states:

   " 'Unemployment compensation statutes, being remedial in nature, should be liberally construed to achieve the benign purposes intended to the full extent thereof.' Syllabus point 6, *Davis v. Hix,* 140 W.Va. 398, 84 S.E.2d 404 (1954)."

9. *See* Footnote 2 for the language of W.Va.Code, 21A–6–15(2)(a).

---

Upon completion of one hundred thirty-three days of employment in any one school year, substitute teachers shall accrue seniority exclusively for the purpose of applying for employment as a permanent, full-time professional employee. One hundred thirty-three days or more of said employment shall be prorated and shall vest as a fraction of the school year worked by the permanent, full-time teacher.

pointment as a day-to-day substitute teacher carries no assurance that any stipulated number of days of employment will be provided." At the administrative level, the Personnel Director of the Fayette County Schools admitted that the contract does not require that substitute work be given.

This lack of security as to the number of work days in a substitute teacher's contract is not an uncommon occurrence. Other jurisdictions have dealt with this question under unemployment security statutes similar to ours and have concluded that the lack of specificity as to the number of work days does not mean the substitute teacher's contract is without reasonable assurance of work. The Supreme Court of Rhode Island in *Preziosi v. Department of Employment Security, Board of Review*, 529 A.2d 133, 136 (R.I.1987), addressed this issue and began by noting:

> The fact that a substitute works the required number of days one year does not guarantee that he or she will be given the opportunity to work the same number of days the next years. *See Indianapolis Public Schools v. Review Board of Indiana Employment Security Division*, 487 N.E.2d 1343 (Ind.App.1986). . . .

The Rhode Island Supreme Court concluded that ". . . substitutes need only a reasonable assurance that they will perform some type of substitute teaching in the upcoming year in order to be disqualified from receiving unemployment benefits during the summer term." *Id.* at 136. *See also Patrick v.*

*Board of Review*, 171 N.J.Super. 424, 409 A.2d 819 (1979).

Much the same argument was advanced by a substitute teacher in *Slominski v. Employment Division*, 77 Or.App. 142, 146, 711 P.2d 215, 217 (1985), where the court stated:

> The nature of substitute teaching is that the teacher does not know before the beginning of the school year how many days he actually will work. Despite that uncertainty as to the quantity of work, substitute teaching in both the year preceding and the year succeeding a summer recess will disqualify a teacher from benefits during the recess.

Consequently, we conclude that the fact that a substitute teaching contract does not contain a specific number of work days does not mean that the contract is without reasonable assurance of employment under W.Va.Code, 21A–6–15(2)(a).

For the foregoing reasons, we affirm the judgment of the Circuit Court of Kanawha County.

Affirmed.

BROTHERTON, C.J., did not participate.

MILLER, Retired Justice, sitting by special assignment.