Harry I. MALLORY and Jeanne L. Mallory, individually and on behalf of all others similarly situated, Plaintiffs,

v.

MORTGAGE AMERICA, INC., a corporation d/b/a Alternative Lending Mortgage Corporation and Industry Mortgage Company, a corporation, Defendants.

No. Civ.A. 2:97–0338.

United States District Court, S.D. West Virginia, at Charleston.

Sept. 30, 1999.

602

Daniel Hedges, Mountain State Justice, Inc., Charleston, WV, for plaintiffs.

Richard L. Gottlieb, Lewis, Friedberg, Glasser, Casey & Rollins, Charleston, WV, for defendants.

## MEMORANDUM ORDER

COPENHAVER, District Judge.

This matter is before the court on the parties' cross motions for summary judgment with respect to the state law class claim asserted in Count I of plaintiffs' amended complaint.

### I.

On September 7, 1996, the named plaintiffs borrowed $60,000 from defendant Mortgage America, Inc. d/b/a Alternative Lending Mortgage Company. The loan was subsequently assigned to defendant Industry Mortgage Company. The named plaintiffs were to repay the loan at a rate of approximately $819 per month for a period of 179 months, for a total of $146,-601. At the conclusion of this period, the named plaintiffs were to make a balloon payment to defendants of $55,925.

The named plaintiffs complain of several aspects of the loan transaction and they assert four individual claims in addition to the one class claim.[1] The Count I class claim concerns whether the loan complied with West Virginia Code § 46A–2–105(2), which, in short, requires loan documents to disclose in specified language, set out conspicuously,[2] the existence of any balloon payment due under a consumer loan, such as the loan in issue, and whether the failure to disclose such a payment in the language and the all-capital letters set forth in the statute renders the loan illegal, unconscionable and unenforceable pursuant to West Virginia code § 46A–2–121. Plaintiffs seek civil penalties in the amount of $3,100 for each of the named plaintiffs and class members as a result of defendants' alleged failure to comply with West Virginia Code § 46A–2–105(2). The court provisionally certified the class b a memorandum order entered March 30, 1998, and fully certified the class by order entered April 30, 1998. the certified class consists of all consumers who signed a balloon loan agreement in West Virginia with the defendants within ten years of the filing of this action and whose loan agreement did not comply with § 46A–2–105(2).[3]

### II.

#### A. Summary Judgment Standard

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Material facts are those necessary to establish the elements of a party's cause of action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If a party fails to establish an essential element of the cause of action, the opposing party is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91

---

1. The four individual claims in the amended complaint consist of: (1) a Count II state law unconscionability claim; (2) a Count III state law fraud claim; (3) a Count IV federal law truth-in-lending claim; and (4) a Count V state law debt collection claim. The parties have moved for summary judgment only with respect to Count I of the amended complaint.

2. *See infra* at 5–6.

3. During the pre-trial conference held in this action on March 24, 1999, the parties advised the court that there are fifty members of the certified class.

L.Ed.2d 265 (1986). That is, a defendant satisfies its requirement as a matter of law by demonstrating that there is an absence of evidence to support the plaintiff's claims. *Cray Communications, Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 393–94 (4th Cir.1994), *cert. denied*, 513 U.S. 1191, 115 S.Ct. 1254, 131 L.Ed.2d 135 (1995). A defendant is also entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the plaintiff. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir.1991).

Conversely, summary judgment is not appropriate if the evidence is sufficient for a reasonable jury to return a verdict in favor of the plaintiff. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn from them are in dispute. *Overstreet v. Kentucky Cent. Life Ins. Co.*, 950 F.2d 931, 937 (4th Cir.1991).

In reviewing the evidence, a court must neither resolve disputed facts or weigh the evidence, *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985), nor make determinations of credibility, *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir.1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979). Inferences that are "drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

### B. *Failure to Disclose Balloon Payment in Accordance With West Virginia Code § 46A–2–105(2)*

Count I alleges, in part, that defendants' loan documents failed to properly disclose the existence of any balloon payment due under the terms of the loan in accordance with West Virginia Code § 46A–2–105(2), which provides, in pertinent part, that:

> With respect to a consumer credit sale or consumer loan whenever any scheduled payment is at least twice as large as the smallest of all earlier scheduled payments other than any down payment, any writing purporting to contain the agreement of the parties shall contain the following language typewritten or printed in a conspicuous manner. THIS CONTRACT IS NOT PAYABLE IN INSTALLMENTS OF EQUAL AMOUNTS: Followed, if there is only one installment which is at least twice as large as the smallest of all earlier scheduled payments other than any down payment, by: AN INSTALLMENT OF $....... WILL BE DUE ON ....... or, if there is more than one such installment, by: LARGER INSTALLMENTS WILL BE DUE AS FOLLOWS: (The amount of every such installment and its due date shall be inserted).

W.Va.Code § 46A–2–105(2) (1998).

In connection with their loan, the named plaintiffs signed various documents, including, but not limited to, a truth-in-lending disclosure statement, a promissory note, a balloon rider, a balloon mortgage notice, and a mortgage loan disclosure statement. According to defendants, these same documents are signed by all of their consumer borrowers who obtain a balloon loan secured by an interest in real estate. (*See* Defendants' Memo. in Support of Motion for Partial Summary Judgment, Exh. A, Affidavit of Thomas P. LaPorte, ¶ 8).

The documents signed by the named plaintiffs contained the following disclosures regarding the balloon payment. First, the truth-in-lending disclosure statement included the following language:

> Your Payment Schedule Will Be:

> 179 payments monthly of $818.96 beginning October 12, 1996

> 1 payment of $55,925.32 due on September 12, 2011

(*See* Defendants' Memo. in Support of Motion for Partial Summary Judgment, Exh. C, Truth–in–Lending Disclosure Statement).

Additionally, Section 3 of the promissory note provided that:

3. PAYMENTS

\* \* \* \* \* \*

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $179 payments monthly of $818.96 beginning October 12, 1996 1 payment of $55,925.32 due on September 12, 2011

(*See Id.,* Promissory Note).

Attached to the promissory note was a rider entitled "BALLOON RIDER TO NOTE" which stated the following:

For a valuable consideration, receipt of which is hereby acknowledged, both Borrower and Lender agree that this BALLOON RIDER TO NOTE ("Rider") amends that certain Promissory Note ("Note") of date shown above, to which this Rider is attached. Borrower and lender agree that this Note shall be subject to the following provisions, notwithstanding any provisions to the contrary contained in said Note or the Mortgage given by Borrower to secure repayment of the Note.

BALLOON PAYMENT

This loan is payable in full at the end of fifteen (15) years. Borrower must repay the entire principal balance of the loan and the unpaid interest then due. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. Borrower will therefore be required to make payment out of other assets borrower may own, or borrower will have to find a lender, which may be the lender borrowers [sic] has this loan with, willing to lend borrower the money at prevailing market rates, which may be considerably higher or lower than the interest rate on this loan. If borrowers [sic] refinances this loan at maturity, borrower may have to pay some or all closing costs normally associated with a new loan, even if borrower obtains refinancing from the same lender.

(*See Id.,* Balloon Rider to Note).

Plaintiffs also signed a balloon mortgage notice reading as follows:

BALLOON MORTGAGE NOTICE

Thank you for applying for a mortgage loan from us. The payment schedule you've selected requires a "balloon" payment. We urge you to read this very carefully because we feel it is important you understand it.

By having a balloon payment as a final payment, we can offer you a loan with smaller monthly payments. In other words, because you will make a larger payment at the end of the loan, your regular monthly payment will be lower than the monthly payment on a loan with equal payments over the same number of months.

"IMPORTANT"

At the end of the loan you will have three alternatives:

1. To apply to us to refinance the balloon payment so that you can pay it in monthly installments. The refinance will be available only to those who have handled their account in a satisfactory manner and have satisfactorily maintained their financial condition.

2. To pay the balloon payment in full.

3. To apply to another lender to refinance the balloon payment.

Before signing this statement which acknowledges your acceptance of the balloon payments, please be sure you fully understand the terms of your loan.

I/We have read and understand and acknowledge receipt of this letter.

(*See Id.*, Balloon Mortgage Notice).

Lastly, plaintiffs signed a mortgage loan disclosure statement which indicated the following:

> YOU ARE NOT REQUIRED TO COMPLETE THIS AGREEMENT MERELY BECAUSE YOU HAVE RECEIVED THE DISCLOSURE OR HAVE SIGNED A LOAN APPLICATION. IF YOU OBTAIN THIS LOAN, THE LENDER WILL HAVE A MORTGAGE ON YOUR HOME. YOU COULD LOSE YOUR HOME AND ANY MONEY YOU HAVE PUT INTO IT IF YOU DO NOT MEET YOUR OBLIGATIONS UNDER THE LOAN.
>
> 1. The Annual Percentage Rate on your loan will be *17,4205%*.
> 2. Your regular monthly payment will be *$818.96*.
> 3. Your loan is a: (Check one)
>
> (XX) Fixed rate loan. "Balloon" Note
>
> OR
>
> ( ) Variable rate loan. The interest rate may increase. Increases in the interest rate could increase your monthly payment.
>
> The highest amount on your payment could increase to $_____.

(*See Id.*, Section 32 Mortgage Loan Disclosure).

Plaintiffs contend that, as a matter of law, defendants violated § 46A–2–105(2) inasmuch as none of the foregoing loan documents executed by plaintiffs contained either the exact language or the conspicuous typing or printing required by that section, and that plaintiffs are entitled to recover civil penalties equal to $3,100 per violation pursuant to West Virginia Code § 46A–5–101(1) as a result of defendants' failure to comply with § 46A–2–105(2).

Defendants do not dispute that they failed to include the exact language and letter capitalization set forth in § 46A–2–105(2) in their loan documents. Defendants maintain, however, that they substantially complied with the requirements of the statute by having plaintiffs sign five different documents, each of which put plaintiffs squarely on notice of the balloon payment. Defendants further assert that, notwithstanding their failure to include the exact language and conspicuousness required by § 46A–2–105(2) in their loan documents, West Virginia Code § 46A–5–101(1) does not afford plaintiffs the right to recover civil penalties solely on the basis of the deficient balloon payment disclosure. Moreover, defendants claim that they corrected the deficiency in their loan documents shortly after learning that they did not comply with § 46A–2–105(2), and that this correction precludes plaintiffs from recovering civil penalties.

■ The court first addresses whether substantial compliance with § 46A–2–105(2) is sufficient under the law of West Virginia. Whether substantial compliance is sufficient depends on whether the statute is directory or mandatory. If the statute is directory, then substantial compliance is sufficient. If, however, it is mandatory, then strict compliance with the statute is required. *See State v. Carduff*, 142 W.Va. 18, 93 S.E.2d 502 (1956); *see also* 82 C.J.S. *Statutes* §§ 374–76 (1953).

As already noted, § 46A–2–105(2) provides that any loan document evidencing a balloon loan:

> [S]hall contain the following language typewritten or printed in a conspicuous manner. THIS CONTRACT IS NOT PAYABLE IN INSTALLMENTS OF EQUAL AMOUNTS ... AN INSTALLMENT OF $_____ WILL BE DUE ON _____.

W.Va.Code § 46A–2–105(2) (1998). West Virginia's version of the Uniform Commercial Code defines conspicuous as "[a] term or clause ... so written that a reasonable person against whom it is to operate ought

to have noticed it." W.Va.Code § 46A–1–102(11) (1998). This statute further provides that the determination of conspicuousness is a matter for decision by the court. *Id.*

The West Virginia Supreme Court of Appeals has not construed this statute. However, other courts applying similar definitions of the term "conspicuous" under the Uniform Commercial Code generally consider three factors in determining whether or not a contract clause is conspicuous. First, consideration is often given to the type-setting of the contract clause, i.e., whether the clause is in the same print type as the remainder of the agreement. Second, courts look to the color of the print in which the clause is written in order to determine whether or not the clause is conspicuous. Finally, the location of the clause within the document or contract is often important in determining whether it is conspicuous. *See generally Nettles v. Techplan Corp.*, 704 F.Supp. 95 (D.S.C.1988) (setting forth the factors often considered by courts in determining the issue of conspicuousness).

■ As noted previously, defendants failed to include the exact language prescribed by § 46A–2–105(2) in each of their loan documents. Notwithstanding this failure, defendants claim that they included language in their documents which plainly informed plaintiffs of the amount and due date of the balloon payment. *See supra* at 606–07. While it is correct that defendants included specific language in their truth-in-lending disclosure statement and promissory note as to the amount and due date of the balloon payment, and included general language in their balloon rider, balloon mortgage notice, and mortgage loan disclosure statement as to the existence of a balloon payment, the court finds that the included language does not meet the level of conspicuousness contemplated by § 46A–2–105(2). Although both the truth-in-lending disclosure statement and promissory note indicated that a single lump sum payment of $55,925.32 was due

on September 12, 2011, this language was not printed in capital letters nor was it set forth in bold or other distinguishable typeface. Indeed, the provision contained in the promissory note concerning the balloon payment is in a typeface that is smaller than that of the surrounding language. Two of the documents do contain capitalization, one setting forth that it is a BALLOON RIDER TO NOTE and the other that it is a BALLOON MORTGAGE NOTICE. Neither, however, accompanies this capitalized language with a statement of the amount of the balloon payment. Further, the amount of the balloon payment is nowhere showing in all caps. The presentation in the documents thus falls well short of the statutory requirement in § 46A–2–105(2) that any loan document evidencing a balloon loan "shall contain the following language typewritten or printed in a conspicuous manner. THIS CONTRACT IS NOT PAYABLE IN INSTALLMENTS OR EQUAL AMOUNTS ... AN INSTALLMENT OF $___ WILL BE DUE ON _____."

■ It appears quite clear that the legislature intended, through the use of the word "shall," that all consumer balloon loan documents contain the language essentially as set out in the statute and in the conspicuous manner illustrated in the statute. It is well-established that "the word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the legislature, should be afforded a mandatory connotation." *E.H. v. Matin,* 201 W.Va. 463, 498 S.E.2d 35, 37 (1997); *State ex rel. Goff v. Merrifield,* 191 W.Va. 473, 446 S.E.2d 695, 701 (1994). With respect to § 46A–2–105(2), the legislature used the word "shall," and there being no language within the statute indicating an intent to the contrary, the court construes the statute as mandatory. As a mandatory statute, strict compliance is required. While language relating to the balloon payment is to be found in the various documents, it was not set forth

either in the manner or with the prominence required by the statute that was designed to bring home to the borrower the extraordinary payment that must some day be met. Thus, plaintiffs are entitled to summary judgment on the issue of whether defendants' loan documents violated § 46A–2–105(2).

### C. *Whether Civil Penalties May Be Recovered*

Having found that plaintiffs are entitled to summary judgment on the issue of whether the defendants' loan documents violated § 46A–2–105(2), the court turns next to the question of whether plaintiffs are entitled, as a matter of law, to recover civil penalties as a result of defendants' failure to comply strictly with the statute.

Plaintiffs seek civil penalties, as a result of defendants' failure to comply with § 46A–2–105(2), of $3,100 per violation pursuant to § 46A–5–101(1). Plaintiffs claim that they are entitled to these civil penalties as a matter of law and have moved the court for summary judgment on this issue. Defendants have also moved

for summary judgment on this issue, arguing that they are not liable for civil penalties as a result of their failure to comply with § 46A–2–105(2) inasmuch as § 46A–5–101(1), to the extent pertinent in this context, allows recovery of civil penalties only in those circumstances where a lessor fails to make proper disclosures in a consumer lease and not in those circumstances, as here, where a lender fails to make proper disclosures in a consumer loan.[4] The statutory review that follows reveals that defendants' position is correct.

West Virginia Code § 46A–5–101(1) provides, in pertinent part to the extent relied upon by plaintiffs, that:

> If a creditor has violated the provisions of this chapter applying to ... disclosure with respect to consumer leases ... the consumer has a cause of action to recover actual damages and in addition a right in an action to recover from the person violating this chapter a penalty in an amount determined by the court not less than one hundred dollars nor more than one thousand dollars.[5]

---

**4.** Defendants make two additional arguments with respect to civil penalties. First, defendants claim that they corrected the deficiency in their loan documents upon learning that they did not comply with § 46A–2–105(2), and that this correction precludes plaintiffs from recovering civil penalties under § 46A–5–101(1). Defendants' second contention is that, in the event plaintiffs are entitled to recover civil penalties, the amount of such penalties is limited to $100 to $1,000 per violation and not the adjusted amount sought by plaintiffs of $310 to $3,100 per violation. Because the court concludes that the civil penalty provision does not apply at this juncture, the error notification defense and inflation adjustment factor are each dealt with in another context, *infra* at 32 *et seq.* and 38 *et seq.*

**5.** By virtue of indexing, which plaintiffs claim is authorized by West Virginia Code § 46A–5–106, the penalty of $100 to $1,000 is approximated by plaintiffs to be $310 to $3,100. West Virginia Code § 46A–5–106 provides that:

> In any claim brought under this chapter applying to illegal, fraudulent or unconscionable conduct or any prohibited debt col-

lection practice, the court may adjust the damages awarded pursuant to § 46A–5–101 to account for inflation from the time that the West Virginia consumer credit and protection act became operative, specifically 12:01 a.m. on the first day of September, 1974, to the time of the award of damages in an amount equal to the consumer price index. Consumer price index means the last consumer price index for all consumers published by the United States department of labor.

W.Va.Code § 46A–5–106 (1998).

Inasmuch as the court finds that the indexing of civil penalties is authorized by § 46A–5–106, *see infra* 38 *et. seq.*, based upon recent information obtained by the court from the United States Department of Labor, Bureau of Labor Statistics, the indexed amount of the civil penalty, using 1974 as a base (1974=100), is approximated to be $335 to $3,358, representing an increase from the figures offered by plaintiffs. *See* 60 Fed.Reg. 5947 (1995) (indicating that 1974 annual average CPI was 147.7); *see also* Bureau of Labor Statistics, United States Department of Labor, *Consumer Price Index for All Urban Consumers, U.S. City Average* (September 9, 1999) (1999 CPI average through July 31,

It is well-established that "[w]hen a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such cases it is the duty of the courts not to construe but to apply the statute." *Ohio Valley Med. Ctr., Inc. v. Gatson,* 201 W.Va. 231, 496 S.E.2d 181, 185 (1997) (quoting *Davenport v. Gatson,* 192 W.Va. 117, 451 S.E.2d 57, 59 (1994)). In examining statutory language, "courts are not free to read into the language what is not there, but rather should apply the statute as written except where a literal application will produce a result demonstrably at odds with the intentions of the drafters." *Keatley v. Mercer County Bd. of Educ.,* 200 W.Va. 487, 490 S.E.2d 306, 311 n. 7 (1997) (citing *West Virginia Human Rights Comm'n v. Garretson,* 196 W.Va. 118, 468 S.E.2d 733, 743 (1996)). In determining legislative intent, the court should, under the doctrine of *expressio unius est exclusio alterius,* infer that the mention of specific items in a statute implies that items not mentioned were not intended to be included within the scope of the statute. *Shawnee Bank, Inc. v. Paige,* 200 W.Va. 20, 488 S.E.2d 20, 27 (1997).

Section 46A–5–101(1) provides that a consumer may recover civil penalties "[i]f a creditor has violated the provisions of this chapter applying to ... disclosure with respect to consumer leases...." There is no mention of the right of consumers to recover civil penalties in those situations where a creditor has violated the provisions of the West Virginia Consumer Credit and Protection Act applying to disclosures with respect to consumer loans. On this basis, defendants argue that the statute is clear and unambiguous and that the court should apply its plain meaning and determine that defendants are not liable for civil penalties as a result of their failure to properly disclose the balloon payment. According to defendants, the legislature clearly delineated the violations for which civil penalties are recoverable and the exclusion of disclosure violations respecting consumer loans was intentional. Plaintiffs contend, however, that the construction advanced by defendants, which would allow recovery of civil penalties as a result of disclosure violations in consumer leases, but not consumer loans, is contrary to the spirit and intent of the West Virginia Consumer Credit and Protection Act.

The court is persuaded by the argument advanced by the defendants. Applying the maxim *expressio unius est exclusio alterius,* the court concludes that the legislature, having mentioned disclosure violations with respect to consumer leases but not consumer loans, did not intend to include consumer loan disclosure violations within the ambit of § 46A–5–101(1). This conclusion is buttressed by an earlier version of the statute which included cross-references to the code sections which described in particular the conduct for which civil penalties may be recovered. Specifically, prior to passage of the 1996 amendment to the statute, § 46A–5–101(1) read as follows:

> If a creditor has violated the provisions of this chapter applying to ... disclosure with respect to consumer leases (§ 46A–2–111) ... the consumer has a cause of action to recover actual damages and in addition a right in an action to recover from the person violating this chapter a penalty in an amount determined by the court not less than one hundred dollars nor more than one thousand dollars.[6]

The clause quoted above respecting disclosure violations cross-references § 46A–2–111, entitled "Consumer leases; information to be furnished," which in turn relates solely to consumer leases.[7]

> With respect to a consumer lease the lessor shall give to the lessee the following information:

1999, was 496.03, representing a 235.8% increase from the 1974 annual average).

**6.** Now $335 to $3,358. *See supra* n. 5.

**7.** The statute cross-referenced, § 46A–2–111, provides as follows:

There is nothing contained within the foregoing section concerning information to be disclosed in consumer loans. That section is limited solely to disclosures in consumer leases. It thus appears that the cross-reference to § 46A–2–111, as contained within the prior version of § 46A–5–101(1), is further evidence that the right to recover civil penalties for failing to disclose information is limited to violations in consumer leases and not consumer loans. If the legislature had intended § 46A–5–101(1) to allow recovery of civil penalties for the disclosure violation here, then the prior version of the statute would doubtless have included, at the least, a cross-reference to the balloon payment disclosure contained in § 46A–2–105(2). Consequently, the court finds that defendants are not liable to plaintiffs for civil penalties resulting from defendants' failure to comply with § 46A–2–105(2).

D. *Unconscionable Contract Clause in Violation of West Virginia Code § 46A–2–121*

Notwithstanding the fact that plaintiffs are not entitled to recover civil penalties due to defendants' failure to properly disclose the balloon payment in accordance with § 46A–2–105(2), plaintiffs assert, and the court agrees, that plaintiffs have an alternative means by which they may be able to recover civil penalties for the disclosure violation at issue in this case. Section 46A–5–101(1) of the West Virginia Code expressly provides plaintiffs with the right to recover civil penalties where the lender's conduct is illegal, fraudulent or unconscionable and induces an unconscio-

nable agreement or contract term violating § 46A–2–121. *See U.S. Life Credit Corp. v. Wilson,* 171 W.Va. 538, 301 S.E.2d 169 (1982).

Section 46A–2–121 provides that:

(1) With respect to a transaction which is or gives rise to a consumer credit sale or consumer loan, if the court as a matter of law finds:

(a) The agreement or transaction to have been unconscionable at the time it was made, or to have been induced by unconscionable conduct, the court may refuse to enforce the agreement, or

(b) Any term or part of the agreement or transaction to have been unconscionable at the time it was made, the court may refuse to enforce the agreement, or may enforce the remainder of the agreement without the unconscionable term or part, or may so limit the application of any unconscionable term or part as to avoid any unconscionable result.

(2) If it is claimed or appears to the court that the agreement or transaction or any term or part thereof may be unconscionable, the parties shall be afforded a reasonable opportunity to present evidence as to its setting, purpose and effect to aid the court in making the determination.

W.Va.Code § 46A–2–121 (1998).

██ The principle of unconscionability is "one of the prevention of oppression and unfair surprise and not the distur-

(1) Brief description or identification of the goods;
(2) Amount of any payment required at the inception of the lease;
(3) Amount paid or payable for official fees, registration, title privilege, certificate of title or license fees or taxes;
(4) Amount of other charges not included in the periodic payment and a brief description of the charges;
(5) Brief description of insurance to be provided or paid for by the lessor, including the types and amounts of the coverages;

(6) Number of periodic payments, the amount of each payment, the due date of the first payment, the due dates of subsequent payments or interval between payments, and the total amount payable by the lessee;
(7) Statement of the conditions under which the lessee may terminate the lease prior to the end of the term; and
(8) Statement of the liabilities the lease imposes upon the lessee at the end of the term.
W.Va.Code § 46A–2–111 (1998).

bance of reasonable allocation of risks or reasonable advantage because of superior bargaining power or position." *Orlando v. Finance One of West Virginia, Inc.,* 179 W.Va. 447, 369 S.E.2d 882, 885 (1988). In determining whether conduct is unconscionable, the court must consider "whether, in light of the background and setting of the market, the needs of the particular trade or case, and the condition of the particular parties to the conduct or contract, the conduct involved is, or the contract or clauses involved are so one sided as to be unconscionable under the circumstances existing at the time the conduct occurs or is threatened or at the time of the making of the contract." *Id.* (citing Uniform Consumer Credit Code, § 5.108 comment 3, 7A U.L.A. 170 (1974)). An analysis of whether a contract term is unconscionable necessarily involves an inquiry into the circumstances surrounding the execution of the contract and the fairness of the contract as a whole. *Troy Mining Corp. v. Itmann Coal Co.,* 176 W.Va. 599, 346 S.E.2d 749, 753 (1986).

A determination of unconscionability must focus on the relative positions of the parties, the adequacy of the bargaining position, and the existence of meaningful alternatives available to the plaintiffs.. *Art's Flower Shop, Inc. v. Chesapeake and Potomac Tel. Co.,* 186 W.Va. 613, 413 S.E.2d 670, 675 (1991). A bargain may be unconscionable if there is "gross inadequacy in bargaining power, together with terms unreasonably favorable to the stronger party...." *Troy Mining,* 346 S.E.2d at 753. Gross inadequacy in bargaining power may exist where consumers are totally ignorant of the implications of what they are signing, *Board of Educ. of Berkeley County v. W. Harley Miller, Inc.,* 160 W.Va. 473, 236 S.E.2d 439, 447 (1977), or where the parties involved in the transaction include a national corporate lender on one side and unsophisticated, uneducated consumers on the other. *Arnold v. United Co. Lending Corp.,* 204 W.Va. 229, 511 S.E.2d 854, 861 (1998).

Unconscionability claims should but rarely be determined based on the pleadings alone with no opportunity for the parties to present relevant evidence of the circumstances surrounding the consummation of the contractual relationship. *Carlson v. General Motors Corp.,* 883 F.2d 287, 292 (4th Cir.1989). When it is claimed that a contract or any clause thereof may be unconscionable, the parties should be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination. *Id.* at 293. Full development of the record is a prerequisite to consideration of an unconscionability claim because whether a meaningful choice is present in a particular case can only be determined by consideration of all the circumstances surrounding the transaction. *Id.* (citing *Williams v. Walker–Thomas Furniture Co.,* 350 F.2d 445, 449–50 (D.C.Cir.1965)). Otherwise, the court can only speculate as to whether or not a contractual term was unconscionable. *Id.* (citing *Ferens v. Deere & Co.,* 639 F.Supp. 1484, 1488 (W.D.Pa.1986)).

Defendants advance two arguments respecting plaintiffs' claim that, as a matter of law, they are entitled to recover civil penalties pursuant to § 46A–5–101(1) on the ground that the loan documents at issue in this case were unconscionable in violation of § 46A–2–121. First, defendants maintain that further factual development is necessary before the court can determine whether the loan contracts executed by plaintiffs were unconscionable. Second, defendants assert that a determination concerning whether their loan documents were unconscionable will require individualized proof on behalf of each alleged class member, making this action inappropriate for class treatment.

Plaintiffs urge the court to find the loan documents at issue to be per se unconscionable and unenforceable and suggest that the court make this determination solely on the basis of the existing record, consisting of the pleadings and the parties' briefs

in support of their cross-motions for summary judgment, without the need for any factual development. In advancing this argument, plaintiffs cite to *Arnold v. United Co. Lending Corp.*, 204 W.Va. 229, 511 S.E.2d 854 (1998), *Orlando v. Finance One of W.Va., Inc.*, 179 W.Va. 447, 369 S.E.2d 882 (1988), *U.S. Life Credit Corp. v. Wilson*, 171 W.Va. 538, 301 S.E.2d 169 (1982), and *Ashland Oil Inc. v. Donahue*, 159 W.Va. 463, 223 S.E.2d 433 (1976), each for the proposition that the court may deem the loan contracts unconscionable per se without considering any of the facts surrounding the execution of the contracts.

The court declines to accept plaintiffs' argument in this regard. While it is true that the West Virginia Supreme Court of Appeals upheld the lower courts' decisions concerning unconscionability in both *Orlando* and *Wilson* without giving any consideration to the facts surrounding the execution of the contracts, those cases are distinguishable from this case inasmuch as the contracts in question in those cases purported to waive rights expressly provided for by statute. There is no suggestion made by plaintiffs in this case that the defendants' loan documents waived any of plaintiffs' statutory rights.

Moreover, while the court in *Donahue* declared a termination clause in a commercial lease unconscionable without considering whether there was a disparity in bargaining power between the parties, *see* 223 S.E.2d at 474, cases decided since *Donahue* make it clear that the court must give some consideration to the circumstances surrounding the transaction, including the relative bargaining power of the parties, before deciding the issue of unconscionability. *See Art's Flower Shop*, 413 S.E.2d at 675; *Troy Mining*, 346 S.E.2d at 753.

Further, although cited by plaintiffs in support of their argument that a factual inquiry is not needed in this case before the court may make a determination concerning unconscionability, *Arnold* supports a contrary conclusion. In *Arnold*, the West Virginia Supreme Court of Appeals was presented with a certified question from the Circuit Court of Lincoln County, West Virginia, concerning the validity of a mandatory arbitration clause contained within the lender's standard form loan contract which waived the borrower's right to a judicial forum while preserving the same for the lender. 511 S.E.2d at 859. The court found the arbitration clause to be unconscionable and unenforceable as a matter of law. *Id.* at 862. In reaching its decision, the court noted that the borrowers were elderly, unsophisticated consumers who had been solicited by the lender, a national corporation, that the borrowers had no other meaningful alternatives available to them, that the borrowers did not have the benefit of legal counsel during the transaction, and that the bargaining positions of the parties were grossly disproportionate. *Id.* at 861. It thus appears that an adequate factual record had been developed in that case which enabled the court to make an informed determination on the issue of unconscionability.

In this case, plaintiffs have offered no evidence regarding the circumstances surrounding the loan transactions at issue. There are no depositions or affidavits which support the allegations contained in plaintiffs' complaint, or the assertions contained in plaintiffs' motion for summary judgment, that the loan documents were unconscionable. There is no evidence that plaintiffs were unsophisticated or uneducated consumers with no other meaningful loan alternatives, nor is there evidence to suggest that the bargaining power of the parties was grossly inadequate. Any determination made by the court on the issue of unconscionability would, at this point, be based on pure speculation. The court will be equipped to address the issue of whether the loan documents were unconscionable only after the parties have had an opportunity to develop and present evidence concerning the circumstances surrounding the loan transactions.

Having found that the parties must develop an adequate factual record before a determination can be made as to whether the loan documents were unconscionable, the court must address defendants' contention that plaintiffs' unconscionability claim may not be litigated as a class action because adjudication of the claim will require an individualized inquiry as to each member of the class. This issue was raised by defendants and rejected by the court in its memorandum order filed March 30, 1998, which provisionally certified the class with respect to Count I of plaintiffs' complaint, wherein the court found that, notwithstanding the possibility that individualized inquiries concerning each class member may be required in this case, the class action device was still the superior method for adjudicating this claim. The court adheres to that ruling.

### E. *Error Notification Defense*

In connection with plaintiffs' unconscionability claim, plaintiffs seek to impose civil penalties upon defendant under another provision contained in § 46A–5–101(1), reading as follows:

> If a creditor has violated the provisions of this chapter applying to … illegal, fraudulent or unconscionable conduct … the consumer has a cause of action to recover actual damages and in addition a right in an action to recover from the person violating this chapter a penalty in an amount determined by the court not less than one hundred dollars nor more than one thousand dollars.[8]

W.Va.Code § 46A–5–101(1) (1998).

Defendants attempt to avail themselves of the defense set forth in West Virginia Code § 46A–5–101(7), which exempts a creditor from liability for civil penalties under § 46A–5–101(1) when notification of an error is made within fifteen days of its discovery, so long as notice is given prior to the institution of an action. West Virginia Code § 46A–5–101(7) provides, in particular, that:

> A creditor has no liability for a penalty under subsection (1) … of this section if within fifteen (15) days after discovering an error, and prior to the institution of an action under this section or the receipt of a written notice of the error, the creditor notifies the person concerned of the error and corrects the error. If the violation consists of a prohibited agreement, giving the consumer a corrected copy of the writing containing the error is sufficient notification and correction. If the violation consists of an excess charge, correction shall be made by an adjustment or refund.

W.Va.Code § 46A–5–101(7) (1998).

Plaintiffs filed suit against defendants on April 4, 1997, and defendants were served with a copy of the complaint on April 9, 1997. (*See* Defendants' Memo. in Support of Motion for Partial Summary Judgment, Exh. A, Affidavit of Thomas P. LaPorte, ¶ 6). Defendants claim that they were not aware that their loan documents did not comply with the balloon payment disclosure requirements of § 46A–2–105(2) until they were served with plaintiffs' complaint. (*Id.*). On April 23, 1997, fourteen days after being served with the complaint, defendants mailed a correction notice to all individuals within West Virginia to whom defendants had made consumer balloon loans. (*Id.*, ¶ 7). A representative notice offered by defendants shows that they disclosed the following:

> You received the above described loan from Mortgage America, Inc., dba Alternative Lending Mortgage Corporation. The following statement was omitted from your loan documents. Please attach this disclosure to the Note which you signed at the loan closing:

> THIS CONTRACT IS NOT PAYABLE IN INSTALLMENTS OF EQUAL AMOUNTS:

---

**8.** Now $335 to $3,358. *See supra* n. 5.

AN INSTALLMENT OF $[55,925.32] WILL BE DUE ON [SEPTEMBER 12, 2011].

This letter does not change any term or condition of your loan.[9]

(*See* Defendants' Memo. in Support of Motion for Partial Summary Judgment, Exh. B).

Defendants acknowledge that they are barred from asserting the error notification defense provided for in § 46A–5–101(7) as to the named plaintiffs inasmuch as the corrective notice was sent to the named plaintiffs after the filing of this lawsuit. Defendants assert that the defense is still available, however, to bar the class action since the corrective notice was mailed to the other members of the class before they instituted suit which, according to defendants, was April 30, 1998, the day on which the class was fully certified by the court. Plaintiffs argue that defendants may not avail themselves of this defense with respect to the class because the named plaintiffs filed this action in a representative capacity on behalf of all members of the class prior to the mailing of the notice and that institution of this action terminated defendants' ability to cure its error as to the class. Neither party has cited authority directly on point in support of the arguments advanced on this issue.

A similar issue has been addressed, however, in the context of the Truth in Lending Act in *Lirtzman v. Spiegel, Inc.,* 493 F.Supp. 1029 (N.D.Ill.1980). In *Lirtzman,* the plaintiff filed a class action against the defendant lender seeking to recover money damages for defendant's alleged violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* and Regulation Z, 12 C.F.R. § 226, in connection with defendant's open and credit card plan offered to its catalog customers. 493 F.Supp. at 1031. In its answer to plaintiff's complaint, defendant asserted the error notification defense provided for by the Truth In Lending Act, 15 U.S.C. § 1640(b), which is somewhat similar to § 46A–5–101(7) in that it allows a lender to avoid liability for the penalty by sending a notice of correction to a borrower within sixty days after discovering the error so long as the lender does so prior to the institution of an action or the receipt of written notice of the error. *Id.* at 1033. Plaintiff moved to strike the affirmative defense on the ground that he filed the action in a representative capacity on behalf of all members of the purported class, and that institution of his action terminated defendant's ability to cure as to all other members of the purported class. *Id.* at 1034. The court refused to strike the defense, noting that the defense might be successful as against all members of the purported class, save for the named plaintiff, in the event the court determined that the named plaintiff was not a proper class representative, or in the event the court elected not to certify the class. *Id.*

 The plaintiff class here has met the requirements of *Lirtzman* inasmuch as the court has already determined that the named plaintiffs are proper class representatives and has previously certified the class. Apart from the rationale of *Lirtzman,* it is observed that the commencement of a class suit tolls the running of the statute of limitations for all purported members of the class unless and until the court determines not to certify the class. *See, e.g., American Pipe and Constr. Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). For these reasons, the court is persuaded that, for purposes of the error notification defense, the class members here instituted suit at the time the original action was filed by the named plaintiffs and that, were the issue presented to it, the West Virginia Supreme Court of Appeals would find the

---

**9.** The notice attached as Exhibit B to defendants' motion for partial summary judgment is not the actual notice sent to the named plaintiffs, but rather is a copy of the notice sent to another borrower which defendants claim is representative of the notice sent to the named plaintiffs and all members of the class.

defendants' notice untimely under § 46A–5–101(7).[10]

Accordingly, defendants may not avail themselves of the error notification defense provided for by § 46A–5–101(7) to avoid liability for civil penalties which may be recoverable by members of the class pursuant to § 46A–5–101(1).

### F. *Inflation Adjustment Factor*

Lastly, defendants claim that, in the event plaintiffs are entitled to recover civil penalties in this case, the amount recoverable by plaintiffs is limited to $100 to $1,000 per violation, and not the adjusted amount of $310 to $3,100 as sought by plaintiffs.[11]

As already noted, *see supra* n. 5, West Virginia Code § 46A–5–106 allows the court to "adjust the damages awarded pursuant to § 46A–5–101 to account for inflation ... from September 1, 1974, to the time of the award of damages in an amount equal to the consumer price index" for any claims brought by consumer debtors against consumer lenders for illegal, fraudulent, or unconscionable conduct or for unfair debt collection practices. W.Va. Code § 46A–5–106 (1998). Here, plaintiffs have asserted a claim for illegal, fraudulent or unconscionable conduct against defendants. The damages that may be recovered under § 46A–5–101 for illegal, fraudulent or unconscionable conduct are set forth particularly in subsection (1) of that section, which includes actual damages and civil penalties. W.Va.Code § 46A–5–101(1) (1998).

According to defendants, § 46A–5–106 does not authorize the court to ad-

just for inflation any civil penalties recovered by plaintiffs. Defendants claim that if the Legislature intended for the inflation adjustment factor to apply to civil penalties that it would have expressly provided for such in the statute. Plaintiffs maintain that the construction advanced by defendants would, in effect, render § 46A–5–106 meaningless inasmuch as the only other damages recoverable by plaintiffs under § 46A–5–101(1) are actual damages which are determined by the fact finder as the amount necessary to fully compensate the plaintiffs for their losses, plus accrued interest, and such an amount need not be adjusted for inflation. Thus, according to plaintiffs, the Legislature must have intended the inflation adjustment factor to apply to civil penalties, notwithstanding its use of the word "damages."

The court is persuaded by the argument advanced by plaintiffs. Section 46A–5–101 was enacted on September 1, 1974, at which time the statute allowed borrowers to recover actual damages plus civil penalties in an amount ranging from $100 to $1,000. At that time, there was no provision in Chapter 46A of the West Virginia Code that allowed for an inflation adjustment. Then, in 1994, § 46A–5–106 was enacted, allowing damages to be adjusted for the amount of inflation occurring from September 1, 1974, to the time of the award. It is apparent that the fixed monetary range of the penalty would have become in obvious need of adjustment after the lapse of twenty years or more. The court concludes that a primary purpose of § 46A–5–106 was to account for the effect of inflation on the specific monetary amount prescribed in the 1974 Act, that is,

---

**10.** Although plaintiffs do not make the argument, it can also be contended that the defendants received written notification of the error as to the class at the time the complaint instituting this action was served upon them. In their complaint, plaintiffs describe the class, later certified as such, as "all consumers who (a) signed a loan agreement in West Virginia with the defendant in the ten years immediately preceding the filing of this action; (b) which contracts contained a balloon

payment; and (c) which contracts did not contain the disclosure required by W.Va.Code § 46A–2–105(2)." (*See* Complaint at ¶ 19). Inasmuch as the court has concluded that the institution of this class action was effective to bar the error notification defense as to the named plaintiffs and the class members alike, the court need not further address the matter.

**11.** Now $335 to $3,358. *See supra* n. 5.

the $100 to $1,000 penalty, for the twenty year period between the enactment of § 46A–5–101 in 1974, and the enactment of § 46A–5–106 in 1994, and beyond to the time of the award. The court thus reads the term "damages" broadly to include both the "actual damages and ... penalty" specified in § 46A–5–101(1).

### III.

For the foregoing reasons, it is OR-DERED that plaintiffs' motion for partial summary judgment be, and it hereby is, granted, to the extent that the court finds, as a matter of law, that defendants violated § 46A–2–105(2) as a result of their failure to include the prescribed language in the conspicuous manner required by that section in their balloon loan documents. In all other respects, plaintiffs' motion for partial summary judgment is denied. It is further ORDERED that defendants' motion for partial summary judgment be, and it hereby is, granted, to the extent that the court finds, as a matter of law, that defendants are not liable to plaintiffs for civil penalties pursuant to § 46A–5–101(1) as a result of defendants' violation of § 46A–2–105(2). In all other respects, defendants' motion for partial summary judgment is denied.

The Clerk is directed to forward copies of this order to all counsel of record.