Mark A. KRIEGER, Plaintiff,

v.

Warren E. GAST, et al., Defendants.

No. 4:99–CV–86.

United States District Court,
W.D. Michigan,
Southern Division.

Aug. 22, 2000.

Thomas A. Baird, White, Przybylowicz, Schneider & Baird, PC, Okemos, MI, Charles R. Watkins, Robert J. Emanuel, Susman & Watkins, Chicago, IL, for plaintiff.

Jon R. Muth, Miller, Johnson, Snell & Cummiskey, Grand Rapids, MI, Anne N. DePrez, Karoline W. Jackson, Barnes & Thornburg, Indianapolis, IN, Kevin Abraham Rynbrandt, Varnum, Riddering, Schmidt & Howlett, LLP, Grand Rapids,

MI, Kevin J. O'Brien, Butler, Rubin, Saltarelli & Boyd, Chicago, IL, for defendants.

## *OPINION*

QUIST, District Judge.

Plaintiff, Mark A. Krieger ("Krieger"), filed a class action complaint against Defendants, Gast Manufacturing Corporation ("GMC"), Warren E. Gast, William E. Johnson, Kevin C. Gast, Jay Van Den Berg, and Allan Westmaas alleging state law claims for breach of fiduciary duty (Count I), aiding and abetting/inducement and conspiracy to commit a breach of fiduciary duty (Count II), common law fraud (Counts III and IV), negligent misrepresentation (Count V), conspiracy (Count VI), and unjust enrichment (Count VII).[1] Krieger's claims arise out of an August 1996 merger in which the GMC minority shareholders were "squeezed out," as well as certain post-merger transactions. Krieger alleges that the merger and other transactions were part of a plan by the directors and major shareholders of GMC to appropriate for themselves part of the value of Krieger's and the other minority shareholders' stock. Now before the Court is Krieger's revised motion for class certification.

## *Facts*

GMC is a Michigan corporation engaged in the business of manufacturing and selling compressors, pumps, blowers, and related items. Prior to September 1996, Krieger owned 500 shares of GMC Class A common stock. During the period of time relevant to Krieger's claims, Defendants Warren E. Gast, William E. Johnson, Kevin C. Gast, Jay Van Den Berg, and Allan Westmaas (collectively referred to as the "Inside Group") were officers and/or directors of GMC and, along with others, owned approximately 82% of the outstanding shares of GMC Class A and Class B common stock and 73% of the outstanding shares of GMC preferred stock.

Krieger alleges that in 1994, Warren Gast, the president, chief executive officer, secretary, and chairman of the board of GMC, decided to liquidate his holdings in GMC by either taking GMC public through an initial public offering ("IPO") or selling GMC to a third party. (*See* Compl. ¶ 33(b).) In order to facilitate the IPO or sale of GMC, the Inside Group met with various investment bankers, and in or about August 1995, GMC retained McDonald & Co. as its investment banker. (*See id.*) McDonald & Co. then introduced the Inside Group to RDV Corporation ("RDV").

According to Krieger, in a series of meetings held sometime in late 1995 or early 1996, the Inside Group, McDonald & Co., and RDV formulated a plan, dubbed by Krieger as the "Wrongful Plan," to enable the Inside Group, McDonald & Co., and RDV to profit at the expense of the minority shareholders. Krieger alleges that under this plan, the Inside Group and RDV, which was to purchase an interest in GMC, would increase the value of their shares by appropriating part of the value of the minority shareholders' shares through a "squeeze out" at an unfairly low price and thereby gain the ability to realize substantial profits through a subsequent IPO or sale of GMC.

The Wrongful Plan was implemented in July 1996, when the Inside Group and other GMC officials formed a shell corporation called Gast Investment Corporation ("GIC"), into which they transferred all the GMC common and preferred shares that they owned or controlled. On August 8, 1996, the Inside Group caused GMC and GIC to enter into an Agreement and Plan of Merger merging GIC into GMC and leaving GMC as the surviving corporation (the "Merger"). The terms of the agreement provided that all GMC stock owned by minority shareholders would be converted into the right to receive $140 per share for common stock and $10 per share for preferred stock.

On August 9, 1996, a notice of a special shareholders meeting (the "Notice") signed by Warren Gast was sent to GMC sharehold-

---

1. In an Opinion and Order issued on January 21, 2000, the Court dismissed all claims against Defendants McDonald & Company Securities, Inc. and McDonald & Company Investments, Inc. In addition, the Court dismissed Krieger's negligent misrepresentation claim against Johnson, Kevin C. Gast, Van Den Berg, and Westmaas, and dismissed Krieger's aiding and abetting breach of fiduciary duty claim against Gast.

ers. The Notice stated that a meeting would be held on August 21, 1996, to approve the Merger. The Notice also informed the shareholders that GIC would vote its shares in favor of the Merger, that GIC's vote would ensure that the Merger would occur, and that the minority shareholders' shares would be converted into the right to receive $140 and $10 cash, respectively, for common and preferred shares. (*See id.* ¶¶ 39–42.) In addition, the Notice stated that after the Merger the continuing shareholders (who included the Inside Group and others with interests in GIC) would sell to GMC 325,533 shares of GMC stock at $140 per share for an approximate total price of $45.5 million. (*See id.* ¶ 45(a).)

The Merger was approved at the August 21, 1996, shareholders' meeting. Krieger and the other minority shareholders were paid the amounts specified in the Notice for their shares and did not exercise their appraisal rights. *See* M.C.L. §§ 450.1762, 1772–73. Following the Merger, the Inside Group sold 325,533 of their shares to GMC, and RDV and its affiliates purchased from GMC a 49% interest for $4.2 million plus a loan of $4.2 million, as described in the Notice. In May of 1997, nine months after the Merger, GMC entered into negotiations with IDEX Corporation ("IDEX") for the sale of GMC. In January 1998, the continuing shareholders sold GMC to IDEX and received in excess of $300 per share, or over twice the amount the minority shareholders received for their shares. (*See id.* ¶ 51.) Krieger claims that GMC common stock was worth $300 per share on August 21, 1996, and that Defendants either knew or should have been aware of that fact. Krieger further claims that Defendants prevented the minority shareholders from discovering that fact by dissuading them from exercising their statutory appraisal rights by means of misleading statements or omissions in the Notice.

### Standard

The Supreme Court has required district courts to conduct "a rigorous analysis" into whether the prerequisites of Rule 23 are met before certifying a class. *General Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). Before certifying a class, a district court must determine whether the action satisfies all four prerequisites of Rule 23(a) and at least one of the conditions of Rule 23(b). *See In re American Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir.1996). The movant bears the burden of proof. *See id.* "Although a hearing prior to the class determination is not always required, 'it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.'" *Id.* (quoting *General Tel. Co.*, 457 U.S. at 160, 102 S.Ct. at 2372).

### Discussion

Krieger seeks certification of the following class on all claims, except his negligent misrepresentation claim, pursuant to Fed. R.Civ.P. 23(b)(3):

All persons, other than defendants, who owned shares of Gast Manufacturing Corporation common or preferred stock on the merger record date of August 8, 1996, and whose shares were converted into the right to receive $140 per common share and $10 per preferred share, plus an accrued dividend, as a result of the August 21, 1996 merger between Gast Manufacturing Corporation and Gast Investment Corporation.

(Pl.'s Revised Mot. Class Certification at 1.) The Court will analyze the Rule 23(a) requirements and Rule 23(b) requirements to determine whether certification is proper.

**A. Prerequisites of Fed.R.Civ.P. 23(a)**

Rule 23(a) provides that a class may be certified

only if (1) the class is so numerous that joinder of all parties is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

**1. Numerosity**

■ The numerosity requirement is satisfied where "the class is so numerous that

joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). "There is no strict numerical test for determining impracticability of joinder." *American Med. Sys.*, 75 F.3d at 1079. Whether joinder is impracticable depends on the particular circumstances of each case. *See Weaver v. Reagen,* 701 F.Supp. 717, 721 (W.D.Mo.1988). Some of the factors a court may consider are class size, ease of identification of members of the proposed class, geographic distribution of class members, and the ability of the class members to pursue individual actions. *See Kilgo v. Bowman Transp., Inc.,* 789 F.2d 859, 876 (11th Cir.1986); *Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.,* 149 F.R.D. 65, 74 (D.N.J.1993).

█ Krieger alleged in his class action complaint that there are over 50 GMC minority shareholders in the proposed class. (*See* Compl. ¶ 25.) Defendants argue that Krieger has not demonstrated his burden of proving numerosity because Krieger's allegations are based upon mere speculation. However, a plaintiff need not prove the number of class members to a certainty. *See Kurczi v. Eli Lilly & Co.,* 160 F.R.D. 667, 672 (N.D.Ohio 1995). Furthermore, "[t]his Court is entitled to make common sense assumptions to support a finding of numerosity." *Vickery v. Jones,* 856 F.Supp. 1313, 1328 (S.D.Ill.1994) (mem.op.). Krieger's allegation is consistent with the representations by his counsel that there are somewhere between 47 and 56 potential class members. (*See* Watkins Aff. ¶ 4, Pl.'s Reply Br. Ex. A.) Although Krieger's proof of class size is based upon sworn statements made by counsel rather than upon actual evidence, the circumstances in this case are such that the approximate class size can be easily determined based upon GMC's corporate documents.

█ While a class of 50 or so members is not exceptionally large, courts have certified classes with similar numbers of members. *See, e.g., Afro American Patrolmen's League v. Duck,* 503 F.2d 294, 298 (6th Cir.1974) (class of 35 members); *Mallory v. Mortgage Am., Inc.,* 67 F.Supp.2d 601, 604 n. 3 (S.D.W.Va.1999) (class of 50 members); *Rodger v. Electronic Data Sys. Corp.,* 160 F.R.D. 532, 537 (E.D.N.C.1995) (holding that

class certification was appropriate where evidence showed at least 57 members of prospective class). Furthermore, although it is far from an absolute rule, it is generally accepted that a class of 40 or more members is sufficient to meet the numerosity requirement. *See Consolidated Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir.1995) (stating that "numerosity is presumed at a level of 40 members") (citing 1 *Newberg On Class Actions,* 2d § 3.05 (1985 ed.)); *Cox v. American Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir.1986) (same); *Alexander v. Q.T.S. Corp.,* No. 98 C 3234, 1999 WL 965485, at *3 (N.D.Ill. Sept.30, 1999) (mem. op.). However, as one court has noted, "the numerosity requirement ... is more than a mere 'numbers game' ...." *Liberty Lincoln Mercury,* 149 F.R.D. at 74.

In this case, Krieger has demonstrated that the numerosity requirement is satisfied given the number of potential class members. An additional factor that the Court considers relevant to the numerosity determination is that the members of the proposed class are sufficiently dispersed as to make joinder impracticable. According to the affidavit submitted by Krieger's counsel, the class members are located in Michigan and eight other states, including Arizona, Florida, Illinois, New York, California, Georgia, Indiana, and Texas, and possibly Minnesota. (*See* Watkins Aff. ¶ 4.) Therefore, the size and geographic diversity of the proposed class members would make joinder impracticable.

█ Defendants' most significant challenge with regard to numerosity is that Krieger has failed to demonstrate that the claim of each member of the putative class exceeds the $75,000 jurisdictional threshold as required under *Zahn v. International Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973). In *Zahn,* the Court held that each plaintiff in a Rule 23(b)(3) class action suit based on diversity of citizenship must satisfy the amount in controversy requirement under 28 U.S.C. § 1332 where the class members' claims are separate and distinct. Further, any plaintiff whose claim fails to satisfy the jurisdictional amount must be dismissed from the suit. *See Zahn,* 414 U.S. at 301, 94 S.Ct. at 512; *Sellers v. O'Con-*

*nell,* 701 F.2d 575, 579 (6th Cir.1983) (stating that "the general rule is that [ ] separate and distinct claims may not be aggregated") (citing *Snyder v. Harris,* 394 U.S. 332, 335, 89 S.Ct. 1053, 1056, 22 L.Ed.2d 319 (1969)). Defendants maintain that because Krieger has made no showing of how many putative class members' claims exceed $75,000, Krieger cannot establish a sufficiently numerous class.

Krieger's principal response is that *Zahn* is no longer good law in light of the Judicial Improvements Act of 1990, which enacted the supplemental jurisdiction statute, 28 U.S.C. § 1367. Defendants contend that Congress did not intend to displace *Zahn* in adopting § 1367. The Sixth Circuit has not addressed the issue. However, Krieger's position is supported by decisions from two circuit courts, the Fifth Circuit in *Free v. Abbott Laboratories (In re Abbott Laboratories),* 51 F.3d 524 (5th Cir.1995)[2], and the Seventh Circuit in *Stromberg Metal Works, Inc. v. Press Mechanical, Inc.,* 77 F.3d 928 (7th Cir.1996). Defendants' position is also supported by two circuit court decisions, the Third Circuit in *Meritcare, Inc. v. St. Paul Mercury Insurance Co.,* 166 F.3d 214 (3d Cir.1999), and the Tenth Circuit in *Leonhardt v. Western Sugar Co.,* 160 F.3d 631 (10th Cir.1998). Like the courts of appeals, the district courts have also reached opposite conclusions, although the majority of district courts have sided with the Third and Tenth Circuits. *Compare, Greenberg v. Trace National Holdings, Inc.,* No. 99 Civ. 0306(SHS), 1999 WL 587935, at *3–4 (S.D.N.Y. Aug.4, 1999) (following cases in the district holding that *Zahn* has not been overruled); *Crosby v. America Online, Inc.,* 967 F.Supp. 257, 263 (N.D.Ohio 1997) (mem.op.) (concluding that *Zahn* is still valid); *Waters v. Grosfeld,* 904 F.Supp. 616, 620 (E.D.Mich.1995) ("it is clear that Section 1367 does not obviate the force and effect of *Zahn*"); *with Leszczynski v.*

*Allianz Ins.,* 176 F.R.D. 659, 664 (S.D.Fla. 1997) ("For essentially the same reasons set forth in *Abbott* and *Stromberg,* the Court holds that section 1367 overruled *Zahn*").

The cases holding that the enactment of § 1367 overruled *Zahn* do so based upon § 1367(b), which states:

In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rules 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

28 U.S.C. § 1367(b). Those courts reason that because Rule 23 is not included among the Rules listed in § 1367(b), which creates exceptions to the general grant of supplemental jurisdiction in § 1367(a) over related claims, Congress must have intended to overrule *Zahn* by omission. *See Abbott Labs.,* 51 F.3d at 528. Invoking the well-established rule that a court "cannot search legislative history for congressional intent unless [the court] find[s] the statute unclear or ambiguous," those courts conclude that the statute is clear on its face that class actions are not within the enumerated exception to a federal court's exercise of supplemental jurisdiction and such an interpretation would not produce an absurd result. *Id.* at 528–29. On the other hand, courts concluding that § 1367 does not overrule *Zahn* find the statute ambiguous and rely on legislative history. Those courts find ambiguity in the statute primarily because the statute does not indi-

---

**2.** Krieger argues that *Free* is controlling because the Supreme Court recently affirmed *Free.* *See Free v. Abbott Labs., Inc.,* 529 U.S. 333, 120 S.Ct. 1578, 146 L.Ed.2d 306 (2000). However, the affirmance was by an equally divided Court without any written opinion. There is no precedential value to such an affirmance. *See Plaut v. Spendthrift Farm, Inc.,* 514 U.S. 211, 215 n. 1, 115 S.Ct. 1447, 1451 n. 1, 131 L.Ed.2d 328

(1995). In fact, every court that has considered the Supreme Court's affirmance in *Free* has accorded it no precedential effect. *See Mehlenbacher v. Akzo Nobel Salt, Inc.,* 216 F.3d 291, 297 n. 10 (2d Cir.2000); *Lyon v. Caterpillar, Inc.,* 194 F.R.D. 206, 208 n. 1 (E.D.Pa.2000) (mem.op.); *Fu's Garden Restaurant v. Archer–Daniels–Midland Co.,* Nos. C 99–5452 MJJ, C 00–0579 MJJ, 2000 WL 635440, at *2 (N.D.Cal. May 9, 2000).

cate on its face that Congress intended to displace the Supreme Court's long standing rules regarding the amount in controversy requirement in diversity cases. *See Crosby,* 967 F.Supp. at 263 n. 4. In *Leonhardt,* the Tenth Circuit noted that the exceptions in § 1367(b) "concern only the exercise of supplemental jurisdiction over claims against defendants who are made parties to a diversity action under certain rules and claims by plaintiffs who seek to be *added* to an ongoing diversity action." *Leonhardt,* 160 F.3d at 639. While arguing that the statute can be construed as unambiguously indicating that Congress did not intend to overrule *Zahn,* the court acknowledged that ambiguity exists by virtue of the fact that two other circuit courts reached the opposite result and commentators were divided on the issue. *See id.* at 640. Thus, like other courts, the *Leonhardt* court examined the legislative history, which states that "§ 1367 'is not intended to affect the jurisdictional requirements of 28 U.S.C. § 1332 in diversity-only class actions, as those requirements were interpreted prior to [*Finley v. United States,* 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989)],'" in particular, in *Zahn.* Therefore, the court concluded that the legislative history supported *Zahn's* continuing vitality. *See id.* (quoting H.R.Rep. No. 101–734, at 29 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6802, 6860, 6875).

Having reviewed a significant number of decisions reaching opposite conclusions, the Court finds itself in agreement with those courts which have concluded that *Zahn* survived the passage of § 1367. In reaching this decision, the Court finds persuasive the *Leonhardt* court's analysis. Furthermore, nothing in the statute persuades this Court that Congress intended to take such a drastic step that would effectively reverse decades of Supreme Court precedent existing at the time § 1367 was passed precluding aggregation of claims in diversity-based class actions.

■ Krieger contends that even if *Zahn* remains good law, this Court may still exercise jurisdiction over all class members' claims. Krieger argues that the Court may still exercise jurisdiction over all claims because Plaintiffs' unjust enrichment and dis-

gorgement claims are "integrated", such that they have an undivided interest in a recovery from Defendants. Aggregation is permitted "in cases in which two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." *Snyder v. Harris,* 394 U.S. 332, 335, 89 S.Ct. 1053, 1056, 22 L.Ed.2d 319 (1969). Although there is no bright line that separates common and undivided claims from individual claims, courts have developed rules to identify such claims. The Sixth Circuit has observed that "[a]n identifying characteristic of a common and undivided interest is that if one plaintiff cannot or does not collect his share, the shares of the remaining plaintiffs are increased." *Sellers,* 701 F.2d at 579. It has also been said that an undivided interest is one which cannot be enforced without the presence of each plaintiff. *See Waters,* 904 F.Supp. at 619.

■ The Court rejects Krieger's characterization of the putative class claims in this case as "integrated" or common and undivided for purposes of invoking diversity jurisdiction. The class members' claims do not arise out of a single unified right since each class member would be entitled to file a separate lawsuit on his or her own behalf. Claims brought by shareholders have generally been treated as arising out of a single title or common right only in derivative actions brought on behalf of the corporation. *Eagle v. American Telephone & Telegraph Co.,* 769 F.2d 541 (9th Cir.1985) is an example of such a case. There, the minority shareholders of the corporation sued the majority shareholder in state court alleging that the majority shareholder wrongfully depleted corporate assets by causing the corporation not to take accelerated depreciation and investment tax credits, which resulted in the corporation refunding $381 million in rate overcharges to rate payers. The plaintiff alleged that the majority shareholder's actions caused a loss of $38 million to the minority shareholders. The defendant removed the case, and the district court granted summary judgment. In addressing the jurisdictional issue on appeal, the Ninth Circuit considered whether the claims were separate and distinct or com-

mon and undivided as set forth in *Snyder.* The Court noted:

> We have previously held that the character of the interest asserted depends on the source of plaintiffs' claims. If the claims are derived from rights that they hold in group status, then the claims are common and undivided. If not, the claims are separate and distinct.

*Eagle,* 769 F.2d at 546. After reviewing cases addressing the issue of common and undivided interests in other settings, the court concluded:

> [T]he shareholders' claims here are common and undivided. Under California law, the source of the shareholders' claim for the wrongful depletion of corporate assets is the common and undivided interest each shareholder has in a corporation's assets and a right to share in dividends. Because shareholders do not own the corporation's assets, the wrongful depletion of corporate assets is an injury to the corporation and only an indirect injury to the shareholders. For this reason, shareholders normally cannot recover in their in individual capacities for a wrongful depletion of corporate assets.

*Id.* at 546–47 (citations omitted).

The *Eagle* court's analysis highlights the individual nature of the class members' claims in this case. Here, Krieger admittedly is not seeking a recovery that will benefit GMC; instead, he seeks his share of the profits Defendants are alleged to have wrongfully appropriated from him. The claims alleged by Krieger do not arise from a unified right or title, but rather from his individual ownership of GMC stock. *See Holt v. Lockheed Support Sys., Inc.,* 835 F.Supp. 325, 329 (W.D.La.1993)(mem.op.)(rejecting "integrated" claim argument because "each plaintiff merely seeks his share from the retirement fund"); *Miller v. American Tel. & Tel. Co.,* 394 F.Supp. 58, 67 n. 7 (E.D.Pa.1975)(stating that a suit against the corporation for direct damages would not be based upon an undivided interest or right).

Krieger contends that his claims for unjust enrichment and disgorgement are "integrated" and therefore may be aggregated. Krieger cites *In re Cardizem CD Antitrust Litigation,* 90 F.Supp.2d 819 (E.D.Mich.1999)(mem.op.), as support for his contention that a disgorgement claim constitutes a common right. In *Cardizem,* plaintiffs filed multiple class action suits in state court alleging that manufacturers of the prescription drug, Cardizem CD, paid a competitor millions of dollars to withhold a generic substitute for Cardizem CD from the U.S. market. The defendants removed the cases based on diversity jurisdiction and the plaintiffs moved for remand. In addressing the jurisdictional amount, the court found that the claims for unjust enrichment and disgorgement asserted by the plaintiffs in the various cases constituted an integrated claim that permitted aggregation. *See Cardizem,* 90 F.Supp.2d at 825–29. However, the claims in *Cardizem* are distinguishable from those in this case in that the defendants' conduct injured an entire market, as opposed to a defined group of plaintiffs. Had the plaintiffs succeeded on their claims, the defendants would have been required to disgorge the entire amount of funds paid to the competitor. In contrast, in this case, Defendants would only be required to disgorge the amount of profits attributable to Krieger's claim. More importantly, Krieger's argument improperly focuses upon the remedy sought, rather than the nature of the claim itself. In *Gilman v. BHC Securities, Inc.,* 104 F.3d 1418 (2d Cir.1997), the court rejected the defendant's argument that aggregation was permissible because the plaintiffs' claim for disgorgement of "order flow payments" or "kickbacks" would create a common fund from which would be paid to the class members. The court rejected the argument because "[s]uch a 'fund' is created to facilitate the litigation process in virtually every class action, and has nothing to do with whether the plaintiffs shared a pre-existing (pre-litigation) interest in the subject of the litigation." *Gilman,* 104 F.3d at 1427. Rather, the court held, "[u]nder the classic 'common fund' cases, what controls is the nature of the right asserted, not whether successful vindication of the right will lead to a single pool of money that will be allocated among the plaintiffs." *Id.* (citing *Pierson v. Source Perrier, S.A.,* 848 F.Supp. 1186, 1188 (E.D.Pa.1994)); *see also Gibson v. Chrysler*

*Corp.*, Nos. C–99–1047 MHP, C–99–1048 MHP, C–99–1049 MHP, 1999 WL 1049572, at *5–6 (N.D.Cal. May 28, 1999)(mem.op.)(noting that "disgorgement is a form of equitable relief" aimed at the defendant's conduct as a whole and that the proper focus in determining the existence of an "integrated" claim is the nature of the right asserted).

Krieger also contends that the Court must consider his request for punitive or exemplary damages of $20,000,000 in determining whether each class member has met the $75,000 jurisdictional threshold. The Sixth Circuit has held that such damages should be considered when they are allowed under state law. *See Klepper v. First Am. Bank*, 916 F.2d 337, 341 (6th Cir.1990). Krieger contends that the amount of the entire request must be considered for each member, but even if it the entire amount sought is pro rated among the class members, the amount assigned to each class member will be more than sufficient to meet the jurisdictional threshold. Courts have reached different conclusions on the issue of whether class punitive damage claims should be aggregated or pro rated. *Compare Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1073–76 (11th Cir.2000)(concluding that punitive damage claim should be pro rated among class members); *Gilman*, 104 F.3d at 1428–30 (concluding that punitive damage claims may not be aggregated of the underlying claim is not an "integrated" claim); *with Fuller v. Exxon Corp.*, 78 F.Supp.2d 1289, 1297–98 (S.D.Ala.1999)(mem.op.)(allowing aggregation of punitive damage request in connection with common and undivided claim). However, the Court must reject Krieger's argument because Michigan law does not allow them. *See Jackovich v. General Adjustment Bureau, Inc.*, 119 Mich.App. 221, 236, 326 N.W.2d 458, 464 (1982).

■ Exemplary damages may be recovered if warranted by the circumstances. Such damages are awarded "where the defendant commits a voluntary act which inspires feelings of humiliation, outrage, and indignity." *Jackson Printing Co. v. Mitan*,

169 Mich.App. 334, 341, 425 N.W.2d 791, 794 (1988)(per curiam). The conduct must be malicious or so wilful and wanton as to demonstrate a reckless disregard of the plaintiff's rights. *See id.* An important limitation on an award of exemplary damages, however, is that they will be denied when an award of compensatory damages would make the injured party whole. *See Hayes–Albion v. Kuberski*, 421 Mich. 170, 187, 364 N.W.2d 609, 617 (1984). Under the set of facts alleged by Krieger, this Court is unable to ascertain any basis for an award of exemplary damages because Krieger and the other class members would be made whole by an award of compensatory damages, which would include the amount the minority shareholders should have received for their stock had they received fair value as Krieger claims. In addition, Krieger has not even alleged that his feelings were hurt by a malicious, wilful, and wanton act of Defendants that would give rise to a claim for such damages.[3] Therefore, there is no basis for including the claimed $20 million in exemplary damages towards the jurisdictional amount.

■ Although the Court has rejected each of the arguments advanced by Krieger to avoid *Zahn*, the numerosity requirement may still be met if the claims of a sufficient number of putative class members meet the jurisdictional threshold. According to Krieger's counsel, 47 members of the proposed class have claims exceeding $75,000. (*See* Watkins Aff. ¶¶ 7–8.) This number is based upon a share price of $290 calculated as follows: (i) Defendants sold GMC for $118 million following the Merger; (ii) prior to the Merger, Krieger and the proposed class held approximately 18% of the outstanding shares of GMC stock; (iii) based upon their 18% interest the class would have been entitled to $21 million, yielding a share price of $252; (iv) the price increases to $290 by using a conservative 6.5% rate of return that Defendants earned on the $21 million since they received it. (*See id.* ¶ 7.) Using the $290 figure, Krieger's counsel states that at least 47 members of the proposed class own the

---

**3.** Courts should scrutinize punitive damage claims more closely than compensatory damage claims when determining the amount in controversy. *See Larkin v. Brown*, 41 F.3d 387, 388–89 (8th Cir.1994)(quoting *Zahn*).

minimum number of shares (259) needed to reach the $75,000 level. (*See id.* ¶ 8.) The problem with the $290 figure is that it does not appear to take into consideration the $140 per share that Krieger and the other class members received for their shares in the Merger. Therefore, the Court finds that the $180 per share price set forth in the Director Defendants' brief is more appropriate because it is based upon Krieger's allegations in his complaint and accounts for the $140 per share Krieger received in the Merger. According to Krieger's counsel, even using the Director Defendants' figure, 41 class members (those owning at least 417 shares of Class A common stock) still meet the jurisdictional threshold. (*See* Watkins Aff. ¶ 8.) Because this number is not significantly less than the initial number, the Court concludes that the numerosity requirement is satisfied even after applying *Zahn.*[4]

### 2. Commonality and Predominance

 The second prerequisite to class certification is that "there [be] questions of law or fact common to the class." Fed. R.Civ.P. 23(a)(2). The commonality requirement is satisfied if there is one question of law or fact. *See Bittinger v. Tecumseh Prods. Co.,* 123 F.3d 877, 884 (6th Cir.1997). "When the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, one or more of the elements of that cause of action will be common to all of the persons affected." *Rodriguez v. Berrybrook Farms, Inc.,* 672 F.Supp. 1009, 1015 (W.D.Mich.1987). However, resolution of the common issue must actually advance the litigation. *See Sprague v. General Motors Corp.,* 133 F.3d 388, 397 (6th Cir.1998).

Although a separate inquiry, the Court finds it appropriate to address the Rule 23(b)(3) predominance requirement at this point along with commonality as those requirements overlap somewhat in this case. *See Clark v. Retrieval Masters Creditors Bureau, Inc.,* 185 F.R.D. 247, 250 (N.D.Ill. 1999)(mem.op.)("The commonality require-

ment of Rule 23(a)(2) and the predominance requirement of Rule 23(b)(3) are closely related"). While some courts have observed that a finding of commonality will generally satisfy the predominance requirement, *see id.,* the Sixth Circuit has stated that the predominance requirement is "more stringent." *American Med. Sys.,* 75 F.3d at 1084; *see also In re Jackson Nat. Life Ins. Co. Premium Litig.,* 183 F.R.D. 217, 221 (W.D.Mich.1998)(stating that the "predominance inquiry is 'far more demanding' than Rule 23(a)'s commonality requirement")(quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 2249–50, 138 L.Ed.2d 689 (1997)).

Krieger has identified the following issues as common to the class:

1. whether the Notice omitted to state or misrepresented material facts concerning, *inter alia,* the Defendants' purposes in effecting the Merger, their plans with respect to the future of Gast and the value of Gast;

2. what was the real value of Gast stock at the time of the Merger;

3. what benefit did the Defendants reap by squeezing Plaintiff out of Gast;

4. whether Defendants acted willfully or recklessly in omitting to state and/or misrepresenting material facts in the Notice; and

5. whether members of the Class have sustained damages, and whether disgorgement or other equitable relief such as rescission of the Merger is an appropriate remedy.

(Pl.'s Mem. Mot. Class Cert. at 12.)

 The Court finds that the issues set forth above suffice to meet the commonality requirement. However, the main issue in contention is whether common issues predominate over individual issues. Defendants contend that Krieger cannot satisfy the predominance requirement, at least with regard to the fraud claims, because the issue of reliance, which is individualized by nature, will predominate over the common issues as

---

4. Because Krieger's counsel did not present the Court with any information regarding Class B common shares or preferred shares, the Court

cannot take amounts relating to those shares into account in determining jurisdictional requirements.

each class member must prove reliance to prevail on the fraud claim. Krieger's response has two prongs: (1) reliance is not an element of his claims for breach of fiduciary duty and unjust enrichment; and (2) reliance does not present a bar to class certification because reliance may be presumed in a case such as this, where fraud is based on omissions.

The Court must reject Krieger's contention that the element of reliance does not pose a bar to his fraud claim because Michigan law does not recognize a "presumption that [ ] relieve[s] a plaintiff of the burden of proving individual reliance in this case." *O'Neil v. Appel,* 165 F.R.D. 479, 505 (W.D.Mich.1996); *Atlantic Group, Inc. v. Rospatch Corp. (In re Rospatch Sec. Litig.),* Nos. 1:90–CV–805, 1:90–CV–806, 1:90–CV–807, 1:91–CV–85, 1991 WL 427890, at *11 (W.D. Mich. July 22, 1991)("there is no rebuttable presumption of reliance on the [Michigan] state law claims as there is for federal securities claims"). Thus, reliance is an individual factor that will predominate over the common claims. Moreover, the Sixth Circuit has held that class certification is inappropriate in cases where proof of individual reliance by class members is required. *See Sprague,* 133 F.3d at 397 (holding certification of individual estoppel claims under ERISA improper because of individual issues of reliance). Likewise, Krieger's conspiracy claim, which is based on fraud, does not meet the predominance requirement because "the gravamen of the [conspiracy] action is not the conspiracy but the wrongful acts." *Gilbert v. Grand Trunk W. R.R.,* 95 Mich.App. 308, 313, 290 N.W.2d 426, 429 (1980). In other words, Krieger and the class would have to prove the elements of the underlying claim—fraud, which includes reliance—in order to succeed on their conspiracy claim.

Therefore, the fraud and conspiracy claims fail to meet the predominance requirement.

Krieger also argues that reliance does not present an obstacle to certification of his breach of fiduciary duty and unjust enrichment claims because reliance is not an element of those claims. The Court disagrees. While it is true that reliance is not an element of those claims, as noted in the Court's previous Opinion on Defendants' motions to dismiss, Krieger's breach of fiduciary duty claims are couched in terms of fraud, relying specifically upon the so-called Wrongful Plan. The Court did conclude in that Opinion that Krieger's unjust enrichment claim was not based upon fraud. However, the fraud and breach of fiduciary duty claims, which incorporate the Wrongful Plan, are at the forefront of the case. Those claims may very well prove to be Krieger's best claims and would likely provide the sole basis of liability on the unjust enrichment claim. Because the fraud-related claims predominate in this case, certification on the other claims would be inappropriate.[5]

### 3. Adequacy

A class representative must "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). Defendants do not make a specific argument and, having no reason to conclude that Krieger would not adequately represent the interests of the class, the Court concludes that Krieger has met his burden on this requirement.

### 4. Typicality

■ Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."

5. Krieger's argument regarding his breach of fiduciary duty and unjust enrichment claim has spawned two legal issues, only one of which relates to the issues presented in the class certification motion. Those issues, which the parties have addressed in separate briefs, are: (i) whether Krieger's breach of fiduciary duty and unjust enrichment claims are barred by the exclusivity provision of the Michigan appraisal statute; and (ii) whether Krieger has the burden of proving that the Merger was "unlawful or fraudulent" or whether Defendants have the burden of proving

the "entire fairness" of the transaction. Although the first issue is related to the predominance issue, i.e., whether Krieger must prove fraud, the Court will address those issues in a separate opinion because a court should not consider the merits of an action in ruling on a motion for class certification. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974); *In re Cincinnati Radiation Litig.,* 187 F.R.D. 549, 551 (S.D.Ohio 1999)(mem.op.).

Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. In other words, when such a relationship is shown, a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff. Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.

*American Med. Sys.*, 75 F.3d at 1082 (quoting 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 3–13, at 3–76 (3d ed.1992)(omitting footnote)).

The Court finds that the claims in this case do not meet the typicality requirement because, as discussed above, Krieger's fraud and breach of fiduciary duty claims (which incorporate allegations of fraud) are the primary claims in this case. Those claims may involve issues that are unique to Krieger but have no bearing on the other class members—for example, whether the Notice actually caused Krieger to refrain from exercising his appraisal rights. Therefore, the fraud-based claims cannot be said to be typical of the class claims.

**B. Rule 23(b)(3) Requirements**

A class may be certified under Rule 23(b)(3) if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and [ ] a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R.Civ.P. 23(b)(3). The Court's conclusion that individual issues will predominate over class issues precludes a finding that Rule 23(b)(3) requirements have been satisfied. Therefore, while the proposed class meets some of the Rule 23(a) requirements, the Court concludes that a class should not be certified because Krieger's claims are not typical of the class's claims and the requirements of Rule 23(b)(3) have not been met.

*Conclusion*

For the foregoing reasons, the Court will deny Krieger's motion for class certification.

An Order consistent with this Opinion will be entered.