# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## January 2015 Term

No. 14-0315

FILED

May 13, 2015

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**LARRY MYERS,**
Petitioner Below, Petitioner

v.

**OUTDOOR EXPRESS, INC., and
WORKFORCE WEST VIRGINIA,**
Respondents Below, Respondents

Appeal from the Circuit Court of Kanawha County
The Honorable Paul Zakaib, Jr., Judge
Civil Action No. 13-AA-71

**AFFIRMED, IN PART, REVERSED, IN PART, AND REMANDED**

Submitted: April 22, 2015
Filed: May 13, 2015

Steven Brett Offutt, Esq.
Law Office of Brett Offutt
Harpers Ferry, West Virginia
Counsel for the Petitioner

Mary Blaine McLaughlin, Esq.
WorkForce West Virginia / Legal Section
Charleston, West Virginia
Counsel for Respondent
WorkForce West Virginia

Brian M. Peterson, Esq.
Bowles Rice LLP
Martinsburg, West Virginia
Counsel for Respondent
Outdoor Express, Inc.

JUSTICE KETCHUM delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1. "The findings of fact of the Board of Review of the West Virginia Department of Employment Security are entitled to substantial deference unless a reviewing court believes the findings are clearly wrong. If the question on review is one purely of law, no deference is given and the standard of judicial review by the court is *de novo*." Syl. pt. 3, *Adkins v. Gatson*, 192 W.Va. 561, 453 S.E.2d 395 (1994).

2. This State's statutory eligibility and disqualification provisions concerning the receipt of unemployment compensation benefits constitute a two-step process. The first step requires determining whether the claimant is eligible to receive benefits. The second step requires determining whether the claimant is disqualified from receiving benefits.

3. "'Generally the words of a statute are to be given their ordinary and familiar significance and meaning, and regard is to be had for their general and proper use.' Syl. pt. 4, *State v. General Daniel Morgan Post No. 548, VFW*, 144 W.Va. 137, 107 S.E.2d 353 (1959)." Syl. pt. 3, *State ex rel. Smith v. W.Va. Crime Victims Compensation Fund*, 232 W.Va. 728, 753 S.E.2d 886 (2013).

**Justice Ketchum**:

The petitioner, Larry Myers ("Myers"), appeals from the February 25, 2014, order of the Circuit Court of Kanawha County affirming the administrative decision of the respondent, Workforce West Virginia ("Workforce"), that Myers was ineligible to receive unemployment compensation benefits for various periods between November 29, 2008, and March 17, 2012.[1] The circuit court directed that Myers pay back $39,713.00 in benefits he received from Workforce for those periods.

Upon review, this Court affirms the conclusion that Myers was ineligible to receive unemployment compensation benefits. Myers was ineligible for benefits because he was neither totally nor partially unemployed during the periods in question. However, we further conclude that the $39,713.00 was improperly calculated, as Myers contends, based on the statute of limitations pertaining to the overpayments in this case. Consequently, this Court reverses that aspect of the case and remands this matter to the circuit court for a determination of the amount of Myers's repayment, consistent with this Opinion.

---

[1] Workforce, which includes the Division of Unemployment Compensation, is part of the West Virginia Department of Commerce. *See W.Va. Code*, 5F-2-1(b)(7) [2011].

1

# I.
## Factual Background

Outdoor Express, Inc. ("Outdoor Express"), a recreational vehicle dealership, sold and provided service for travel trailers and truck campers. Myers, a sales associate, worked at Outdoor Express's location in Falling Waters, West Virginia. Sales of such vehicles normally occurred on a seasonal basis, with higher sales in the summer and warmer months and significantly fewer sales during the winter and colder months.

Myers was paid bi-weekly on a commission basis (3% to 4% of the sales price), but only when his sales were finalized by Outdoor Express during the preceding two-week period. Myers received no pay if no sales were finalized during such period. Due to the seasonal nature of the business and downturns in the economy, sales associates like Myers would occasionally go for weeks without a sale and, thus, without income.

With advice from the local unemployment office in Martinsburg, West Virginia, which was subsequently questioned by Workforce, Outdoor Express issued Low Earnings Reports ("LERs") to Myers for periods when Myers did not receive commission checks for sales of recreational vehicles.[2] Myers filed claims for, and received, unemployment

---

[2] Pursuant to this State's unemployment compensation regulations, *W.Va. C.S.R.*, 21A-2-11.01 (1991), *Employer's Report of Low Earnings*:

> In any week in which an employee is partially unemployed, each

2

compensation benefits for those periods. He did not file claims for periods when he received commission checks.

This case specifically involves twenty-two separate claims for unemployment compensation benefits filed by Myers, and benefits paid, over the period November 29, 2008, to March 17, 2012.[3]

## II.
## Procedural Background

### A. The Administrative Proceedings

On November 13, 2012, and November 16, 2012, the deputy commissioner issued decisions on each of the twenty-two claims. In each claim, the deputy found that Myers was neither totally nor partially unemployed during the periods in question and was, therefore, ineligible for unemployment compensation benefits. The deputy determined that overpayments of benefits had been made in the claims and that the benefits were to be repaid by Myers.

---

employing unit is required to deliver to such employee on or before the payday for the week in which the low earnings occurred . . . a report of low earnings on a prescribed form furnished by the West Virginia Division of Employment Security.

[3] According to Myers, for periods in which he did not receive a commission check, he filed claims and was paid unemployment compensation benefits between $339.00 and $424.00 per week.

3

Myers appealed the deputy's decisions, and a hearing was conducted before the administrative law judge. On February 28, 2013, the administrative law judge affirmed the decisions of the deputy in the twenty-two claims on the basis that Myers was neither totally nor partially unemployed during the periods in question. Among the administrative law judge's findings of fact were the following:

1. The claimant is not entitled to a "draw" upon anticipating commissions.

2. For all relevant time periods, the employer reported the claimant worked forty hours per week for the employer, and paid no compensation.

3. The claimant's sales commissions are and have been adversely affected by both the seasonal nature of sales, and the recent extended downturn in the economy.

4. For all relevant time periods for which LERs were issued by the employer to the claimant, said claimant was performing some services for the company for which the claimant was eventually compensated by commissions.

5. Between the third quarter of 2009, and the third quarter of 2012, the claimant was paid approximately $164,000 in commissions by the employer.

6. During said time period, the employer reported all compensation paid to the claimant on a quarterly basis to the Unemployment Compensation Office.

7. During said time period, the claimant reported no compensation in the form of commissions received to Unemployment Compensation on his continued claim forms.

Affirming Myers's ineligibility to receive benefits, the administrative law judge provided the following analysis:

4

Whereas seasonal workers in construction or landscaping would normally be laid off at the end of the season, or issued LERs when work was scarce, the commission-based employee in this case, Mr. Myers, being a recreational vehicle salesman, was handled differently. Apparently with the misunderstood blessing of the local office, the employer began issuing LERs to the claimant for any slow time during which the claimant did not "earn" (actually physically receive) a commission, even though perhaps a day or two later the claimant would receive a commission check. The employer believed this was a "program" to help companies and employees through lean sales periods without the need to be in conformance with the requirements of the statute regarding total and partial unemployment.

However, one of the striking facts here is that over the relevant time period (late 2008 to late 2012), the claimant was paid more than $164,000 of commissions[.] * * * Bottom line, the claimant was not totally or partially unemployed for any period for which he received Low Earnings Reports by this employer, and, therefore, is ineligible for such periods. During all relevant time periods the claimant was performing services for this employer, and, therefore, does not meet the requirement of being totally or partially unemployed.

No fraud was intended here, and none is being alleged by the Department.

The administrative law judge's findings and conclusions concerning the twenty-two claims were summarily affirmed by the Board of Review on May 15, 2013. Myers appealed the Board's decision to the circuit court.

## B. The Circuit Court Appeal

On February 25, 2014, the circuit court entered an order affirming the decision of the Board of Review. The circuit court concluded that Myers was neither totally nor partially

5

unemployed during the periods in question. Focusing on the issue of partial unemployment, the circuit court stated:

> [Myers's] case was discovered in a cross-match audit comparing the inconsistencies between what the employer reported as the compensation received by [Myers] as well as the fact that [Myers] worked forty (40) hours a week, and the failure of [Myers] to report any compensation on his claim form. * * *
>
> [Myers] is ineligible for unemployment compensation benefits due to the fact that he worked forty (40) hours a week, and, therefore, [was] not partially unemployed.

The circuit court determined that the overpayments of benefits to be repaid by Myers totaled $39,713.00. Myers's appeal to this Court followed.

## III.
## Standards of Review

This Court's standards of review for unemployment compensation cases are axiomatic. Syllabus point 3 of *Adkins v. Gatson*, 192 W.Va. 561, 453 S.E.2d 395 (1994), states:

> The findings of fact of the Board of Review of the West Virginia Department of Employment Security are entitled to substantial deference unless a reviewing court believes the findings are clearly wrong. If the question on review is one purely of law, no deference is given and the standard of judicial review by the court is *de novo*.

6

*Accord* syl. pt. 1, *Childress v. Muzzle*, 222 W.Va. 129, 663 S.E.2d 583 (2008); syl. pt. 1, *Kisamore v. Rutledge*, 166 W.Va. 675, 276 S.E.2d 821 (1981). *See W.Va. Code*, 21A-7-21 [1943] (The Board's findings of fact "shall have like weight to that accorded to the findings of fact of a trial chancellor or judge in equity procedure.").

Moreover, we note that this State's statutory eligibility and disqualification provisions concerning the receipt of unemployment compensation benefits constitute a two-step process. The first step requires determining whether the claimant is eligible to receive benefits. The second step requires determining whether the claimant is disqualified from receiving benefits. *Univ. of W.Va. Bd. of Trustees v. Aglinsky*, 206 W.Va. 180, 182, 522 S.E.2d 909, 911 (1999); *Private Indus. Council of Kanawha Co. v. Gatson*, 199 W.Va. 204, 207, 483 S.E.2d 550, 553 (1997).

In this case, no disqualification issues have been raised. Consequently, our review concerns Myers's eligibility for unemployment compensation benefits and the question of overpayments.

## IV.
### Discussion

Eligibility for unemployment compensation in West Virginia is largely statutory. Under *W.Va. Code*, 21A-6-1(4) [2009], a claimant shall be eligible to receive benefits only

if he or she "has been totally or partially unemployed during his or her benefit year for a waiting period of one week prior to the week for which he or she claims benefits for total or partial unemployment." Total and partial unemployment are defined in *W.Va. Code*, 21A-1A-27 [1996], as follows:

> (1) An individual is totally unemployed in any week in which such individual is separated from employment for an employing unit and during which he or she performs no services and with respect to which no wages are payable to him or her.

> (2) An individual who has not been separated from employment is partially unemployed in any week in which due to lack of full-time work wages payable to him or her are less than his or her weekly benefit amount plus sixty dollars: Provided, That said individual must have earnings of at least sixty-one dollars.

The definition of total and partial unemployment, thus expressed, is further refined in *W.Va. Code*, 21A-1A-24 [1996], which states that "separated from employment" means "the total severance, whether by quitting, discharge or otherwise, of the employer-employee relationship," and in *W.Va. Code*, 21A-1A-28(a) [2009], which states that "wages" means all remuneration for personal service, "*including commissions*." (Emphasis added) Finally, under *W.Va. Code*, 21A-1A-30 [1996], the phrase "weekly benefit rate" is defined as "the maximum amount of benefit an eligible individual will receive for one week of total unemployment."[4]

---

[4] An additional statute, *W.Va. Code*, 21A-1A-16(1) [1997], states that "employment" means service "performed for wages or under any contract of hire, written

In this case, it is undisputed that Myers did not qualify for unemployment compensation benefits under the total unemployment portion of *W.Va. Code*, 21A-1A-27 [1996]. He was never separated from his employment with Outdoor Express by quitting, discharge or otherwise, between November 2008 and March 2012. As the administrative law judge found, for the periods for which LERs were issued, Myers was performing some services for the company. As Myers states, he was "meeting his obligation to do whatever was reasonable and necessary to remain employed." Therefore, the issue is whether Myers was eligible to receive benefits under the partial unemployment portion of *W.Va. Code*, 21A-1A-27 [1996].

While the statutory provisions in this State concerning unemployment compensation are relatively straightforward, this Court is of the opinion that, from a factual standpoint, contested claims for benefits must ordinarily be resolved on a case-by-case basis. The extensive indices in the annotations on the subject attest to that conclusion.[5]

---

or oral, express or implied." In that regard, although Myers was paid on a commission basis and could not draw upon anticipated income from sales, nothing in this case suggests that he was an independent contractor engaged in his own business enterprise. As an employee of Outdoor Express, Myers was, therefore, under the protection of this State's unemployment compensation laws, but only eligible to receive benefits if he was totally or partially unemployed. *See* J. T. W., Annotation, *Who is an Independent Contractor rather than an Employee within Social Security Acts or Unemployment Compensation Acts*, 124 A.L.R. 682 (1940); 76 Am. Jur. 2d *Unemployment Compensation* § 49 (2005).

[5] *See*, *e. g.*, J. C. Williams, Annotation, *Part-Time or Intermittent Workers as Covered by or as Eligible for Benefits Under State Unemployment Compensation Act*, 95

In *Tom's Convenient Food Mart v. W.Va. Human Rights Comm'n.*, 206 W.Va. 611, 613, 527 S.E.2d 155, 157 (1999), this Court noted that, because river rafting is a seasonal industry, employees "are eligible for 'low earnings' unemployment compensation in the off-season." That case, however, concerned a claim of age discrimination litigated before the West Virginia Human Rights Commission, rather than a question of eligibility to receive unemployment benefits.

With regard to seasonal industries, *W.Va. Code*, 21A-6-1a [1963], states:

> An individual working less than one hundred days during his base period in an industry recognized as seasonal, such as food processing and canning, shall not be eligible for benefits unless he has earned wages during his base period in other covered employment equal to not less than one hundred dollars.

As stated in *State by Davis v. C. H. Musselman Co.*, 134 W.Va. 209, 217, 59 S.E.2d 472, 476 (1950), that provision was designed to relieve seasonal employers, in such industries as food processing and canning, from the unfair requirement of being charged with the payment of benefits on a regular basis, from year to year, as the unemployment of its seasonal employees ensues.

---

A.L.R.3d 891 (1979), and L. S. Tellier, Annotation, *Salesman on Commission as Within Unemployment Compensation or Social Security Acts*, 29 A.L.R.2d 751 (1953).

*W.Va. Code*, 21A-6-1a [1963], is not dispositive in the present case. Although Myers's sales of recreational vehicles were seasonal in the sense that there were fewer sales during the winter and colder months, his employment relationship with Outdoor Express was not seasonal within the meaning of the statute. Outdoor Express did not reduce Myers's hours during the periods in question, and, during those downtimes, Myers worked approximately forty hours per week. Moreover, during the downtimes, the possibility of a sale was always present.

Due to his employment relationship with Outdoor Express, Myers's assertion of eligibility for unemployment compensation benefits based on seasonal employment is without merit. *See Homer Laughlin China Co. v. Hix*, 128 W.Va. 613, 625, 37 S.E.2d 649, 655-56 (1946) (The primary purpose of unemployment compensation law is to promote social and economic security and "not to regulate or control the relationship of employer and employee.").

With regard to Myers's wages in the form of commissions, the administrative law judge found that Myers was paid approximately $164,000 over the years from 2009 to 2012.[6]

---

[6] During the hearing before the administrative law judge, Outdoor Express's representative, Frank Subasic, explained:

> Q. But there were times at least during the summer when a commission - when a specific period was not earned by Mr. Myers that you

11

Myers, however, correlates "services" with wages "payable" and contends that he met the eligibility requirement for unemployment compensation benefits because, during the periods for which he filed a claim, he did not sell a recreational vehicle. Myers, therefore, asserts that, for those periods, he did not perform a service for which wages were payable even though he was present on the premises of Outdoor Express. Nevertheless, according to the findings of the administrative law judge, while Outdoor Express reported Myers's income to the unemployment office on a quarterly basis, Myers never reported his income on the unemployment office's claim forms. Consequently, Workforce is warranted in suggesting that Myers's commissions, while paid on occasion, were garnered or "payable" for services over preceding weeks. According to Workforce, Myers should have reported all income earned, even if he had not received payment.

We have consistently held that this State's unemployment compensation statutes should be liberally construed in favor of the claimant, but not when such a construction would conflict with plain and unambiguous statutory language. *Adkins v. Gatson*, *supra*, 192 W.Va. at 564-65, 453 S.E.2d at 398-99; *Davenport v. Gatson*, 192 W.Va. 117, 119, 451

---

were giving him a low earnings report and he was collecting unemployment benefits and maybe a week later he would get a fairly large commission after selling a couple of vehicles?

A. That's possible that happened yes. But I don't - without referring to all the documents - that's possible that could happen, yes.

S.E.2d 57, 59 (1994). Moreover, in syllabus point 3 of *State ex rel. Smith v. W.Va. Crime Victims Compensation Fund*, 232 W.Va. 728, 753 S.E.2d 886 (2013), we confirmed the following principle:

> "Generally the words of a statute are to be given their ordinary and familiar significance and meaning, and regard is to be had for their general and proper use." Syl. pt. 4, *State v. General Daniel Morgan Post No. 548, VFW*, 144 W.Va. 137, 107 S.E.2d 353 (1959).

Here, the definitions of total and partial unemployment set forth in *W.Va. Code*, 21A-1A-27 [1996], refer to whether a claimant for unemployment compensation benefits has obtained wages "payable" to him or her, rather than whether the claimant has, in fact, been paid. *See Short v. Wells Fargo Bank Minn*., 401 F. Supp.2d 549, 563 (S.D. W.Va. 2005) (associating the term "payable" with "legally enforceable" or "obligation to pay"). *See also Appeal of Stewart (N.H. Dept. of Employment Security)*, 64 A.3d 989, 993 (N.H. 2013) ("Paid" means receiving pay or marked by the reception of pay; "payable" means capable of being paid or requiring to be paid.); *General Motors Corp. v. Buckner*, 49 S.W.3d 753, 757 (Mo. Ct. App. 2001) ("The term 'payable,' as used in the context of wages to determine eligibility for unemployment compensation benefits, requires some legal obligation on the part of the employer to compensate employees.").[7]

---

[7] We recognize that in *W.Va. C.S.R.*, 21A-2-7.01 (1991), *Definitions*:

> Contributions and wages shall be reported on a wages paid basis. Wages paid shall be deemed to consist of wages actually or constructively

Consequently, because Myers did not report any commissions earned or payable in conjunction with his claims for benefits for the periods between November 29, 2008, to March 17, 2012, he was not eligible to receive unemployment compensation benefits.

Finally, Myers contends that the circuit court committed error in directing that he pay Workforce the entire $39,713.00 in overpayments. Myers states that the amount should be recalculated based on the two-year statute of limitations set forth in *W.Va. Code*, 21A-10-21 [1989]. That statute, addressing the recovery of benefits paid through error, provides:

> A person who, by reason of error, *irrespective of the nature of said error*, has received a sum as a benefit under this chapter, shall either have such sum deducted from a future benefit payable to him or shall repay to the commissioner the amount which he has received. Collection shall be made in the same manner as collection of past due payment. Provided, That such collection or deduction of benefits shall be barred after the expiration of two years.

paid. Wages are constructively paid when they are credited to the account of or set apart for an employee so that they may be drawn upon by him at any time although not then actually reduced to possession, or whenever they are due an employee and are not actually paid because of employer's refusal or inability to pay.

However, under *W.Va. C.S.R.*, 21A-2-11.01 (1991), *Employer's Report of Low Earnings*, the information required to establish partial unemployment includes "the earnings during the week." That regulation is derivative of the definition of "partial unemployment" set forth in *W.Va. Code*, 21A-1A-27 [1996], and its statutory predecessors, which is grounded on wages "payable" to the claimant. *See Appeal of Stewart (N.H. Dept. of Employment Security)*, *supra*, 64 A.3d at 993 ("Earn" means to come to be duly worthy of, or entitled to, as remuneration for work or services.).

14

(Emphasis added)

Workforce asserts, however, that, if any adjustment in the overpayment of benefits is to be made, the applicable statute is *W.Va. Code*, 21A-10-8 [1990]. That statute, addressing transgressions such as misrepresentation or fraud by a claimant, provides a five and a ten-year statute of limitations.

This case involves neither misrepresentation nor fraud. Outdoor Express issued LERs to Myers, on the advice of the local unemployment office in Martinsburg for periods when Myers did not receive commission checks. That advice was subsequently questioned by Workforce. Although Myers failed to report his income on the claim forms, the principal error rests with the local office and continued for several years while Myers was receiving unemployment compensation benefits. As the administrative law judge stated, "It is incumbent upon the Department to provide more clear and precise instructions to employers and employees that are affected by seasonal activities and who operate on a commission basis." Accordingly, this Court is of the opinion that the applicable statute is *W.Va. Code*, 21A-10-21 [1989], which sets forth the two-year limit.[8]

---

[8] *See generally* J. C. Williams, Annotation, *Repayment of Unemployment Compensation Benefits Erroneously Paid*, 90 A.L.R.3d 987 (1979).

15

# V.
## Conclusion

This Court affirms the circuit court's conclusion that Myers was ineligible to receive unemployment compensation benefits. He was neither totally nor partially unemployed during the periods in question. However, the $39,713.00 overpayment was improperly calculated and should be recalculated pursuant to *W.Va. Code*, 21A-10-21 [1989]. Consequently, this Court reverses that aspect of the case and remands this matter to the circuit court for a determination of the amount of Myers's repayment, *i.e.*, Workforce is barred from collecting benefits paid to Myers prior to two years before the dates of the deputy's decisions on November 13, 2012, and November 16, 2012.

**Affirmed, in part, Reversed, in part, and Remanded.**

16