IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

WORKFORCE WEST VIRGINIA,
Respondent Below, Petitioner

FILED
September 5, 2023

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

vs.) No. 22-ICA-125        (Cir. Ct. Kanawha Cnty. No. 21-AA-49)

BEVERLY KIRKER,
Petitioner Below, Respondent

MEMORANDUM DECISION

Petitioner Workforce West Virginia ("Workforce") appeals the August 25, 2022, "Order Reversing the Final Order of the Board of Review" of the Circuit Court of Kanawha County. Respondent Beverly Kirker did not file a response.[1] The issue on appeal is whether the circuit court erred in reversing the Workforce Board of Review ("Board") and in finding that the Board erred in failing to consider whether it could collect past paid unemployment benefits from Ms. Kirker in light of Governor Justice's Executive Order Nos. 4-20 and 11-21.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the circuit court's decision but no substantial question of law. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure for reversal in a memorandum decision. For the reasons set forth below, the circuit court's decision is reversed, and this case is remanded to the Circuit Court of Kanawha County for further proceedings consistent with this decision.

Ms. Kirker was employed as a long-term substitute teacher by Nicholas County Schools for the 2019-2020 and 2020-2021 school years. Ms. Kirker's initial substitute position ended on June 4, 2020, and she filed for unemployment benefits on or around July 13, 2020. Ms. Kirker received unemployment benefits for the weeks ending July 18, 2020, July 25, 2020; August 1, 2020; August 8, 2020; and August 22, 2020. Her weekly benefit award was $360, and she was paid an additional stimulus of $600 for the weeks of July 18, 2020, and July 25, 2020. The position for which Ms. Kirker previously served as a long-term substitute was posted during the summer of 2020 for a full-time applicant, but when no qualified applicants applied, she was able, on August 25, 2020, to return to the position

---

[1] Workforce West Virginia is represented by Kimberly A. Levy, Esq. Ms. Kirker did not participate in this appeal.

as a long-term substitute. Ultimately, a certified full-time teacher was hired for this position on September 2, 2020, but when that teacher quickly left, Ms. Kirker again, on September 8, 2020, accepted the position as a long-term substitute.

On August 11, 2020, the Board issued its deputy's decision, denying Ms. Kirker unemployment benefits pursuant to West Virginia Code § 21A-6-15(b)(3) (1996). In this decision, the deputy found that Ms. Kirker was not eligible for unemployment benefits because she had a reasonable assurance of returning to work in the period immediately following summer vacation. The deputy determined that Ms. Kirker was disqualified from receiving benefits beginning June 7, 2020, to August 15, 2020, which, resulted in an overpayment of unemployment benefits in the amount of $1,980.

The Board's administrative law judge ("ALJ") held a telephonic hearing on April 27, 2021, at which Workforce did not appear. Ms. Kirker testified that she had worked during the 2019-2020 and 2020-2021 school years as a long-term substitute, but that there was no guarantee that the position would be open to her for the 2020-2021 school year at the time that she applied for unemployment benefits. Further, Ms. Kirker stated that she normally works during the summer, but that she was unable to find a position due to the Covid-19 pandemic, and that the school year ended early as a result of the pandemic. In a decision dated April 28, 2021, the ALJ affirmed the deputy's decision. The ALJ held that Ms. Kirker was disqualified from receiving unemployment benefits beginning June 7, 2020, to August 15, 2020, because she had a reasonable assurance of employment as a substitute teacher at the beginning of the next academic year.

Ms. Kirker appealed the ALJ's decision to the Board, and the Board held a hearing on July 15, 2021. By decision dated July 31, 2021, the Board adopted the ALJ's decision in its entirety. The Board found that Ms. Kirker was disqualified beginning June 7, 2020, to August 15, 2020, as she had a reasonable assurance of employment in the next academic year or term.

On September 9, 2021, Ms. Kirker appealed the Board's decision to the Circuit Court of Kanawha County, asserting that she had no assurance of employment due to the Covid-19 pandemic. By order entered August 25, 2022, the circuit court reversed the Board's decision. The circuit court found that West Virginia Code § 21A-10-21 (1989) limits the collection of erroneously paid benefits after two years. The circuit court also held that the Board erred in failing to consider whether Workforce was prohibited from collecting non-fraudulent overpayments by Governor Jim Justice's Executive Order No. 11-21. The circuit court further found that Executive Order No. 4-20 stated that those prevented from working due to the Covid-19 pandemic were eligible for benefits to the maximum extent permitted by federal law. The circuit court found that schools were closed during the period at issue due to the Covid-19 pandemic, and that no representative of Workforce made any finding of fact as to why it was reasonably assured that Ms. Kirker was likely to resume employment after the vacation period. Based on the foregoing, the

circuit court held that Ms. Kirker did not have a reasonable assurance of returning to work for the 2020-2021 school year under the circumstances. Further, the circuit court held that the Board erred in affirming the ALJ without considering the source of the overpayments, whether recoupment of the overpayments would be against equity and good conscience, and whether the agency maintained its authority to collect the payment. It is from this order that Workforce now appeals.

Our standard of review is as follows:

> The findings of fact of the Board of Review of [Workforce West Virginia] are entitled to substantial deference unless a reviewing court believes the findings are clearly wrong. If the question on review is one purely of law, no deference is given and the standard of judicial review by the court is *de novo*.

Syl. Pt. 3, *Adkins v. Gatson*, 192 W. Va. 561, 453 S.E.2d 395 (1994).

On appeal, Workforce advances several arguments in support of its position. First, Workforce argues that West Virginia Code § 21A-6-15(b)(3) was applicable to this case, and that the circuit court failed to give substantial deference to the findings of the Board regarding whether Ms. Kirker had a reasonable assurance of employment for the 2020-2021 school year. Second, Workforce argues that the circuit court erred in finding that Governor Justice's Executive Order No. 4-20 is applicable to this case. Workforce next argues that Governor Justice's Executive Order No. 11-21 is inapplicable to this case, as Ms. Kirker did not first exhaust all available administrative remedies. Finally, Workforce argues that the circuit court erred in finding that Executive Order No. 11-21 required reversal of the Board's decision.

Turning to Workforce's arguments regarding West Virginia Code § 21A-6-15(b) (3),[2] the Supreme Court of Appeals of West Virginia ("Supreme Court") has previously applied West Virginia Code § 21A-6-15(b)(2) to cases involving substitute teachers receiving unemployment benefits over summer break periods. Syl. Pt. 1, *Adkins v. Gatson*, 192 W. Va. 561, 453 S.E.2d 395 (1994). Thus, we find that the circuit court erred in applying West Virginia Code § 21A-6-15(b)(3) instead of West Virginia Code § 21A-6-15(b)(2), which refers to the period between two academic years. West Virginia Code § 21A-6-15(b)(2) states:

---

[2] Under this assignment of error, Workforce also sets forth several arguments regarding the Federal Unemployment Tax Act. However, these arguments were not considered below, and thus will not be considered for the first time on appeal. "Our general rule is that nonjurisdictional questions. . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co.*, Inc, 206 W. Va. 333, 349 n.20, 524 S.E.2d 688, 704 n.20 (1999)." *Noble v. W. Va. Dep't of Motor Vehicles,* 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009) (per curiam).

3

With respect to services in any other capacity for an educational institution, benefits shall not be paid on the basis of such services to any individual for any week which commences during a period between two successive academic years or terms if such individual performs such services in the first of such academic years or terms and there is a reasonable assurance that such individual will perform such services in the second of such academic years or terms[.]

The record below demonstrates that Ms. Kirker had a long-term substitute position for the 2019-2020 school year, and that she returned to the position for the 2020-2021 school year. Further the record provides that when Ms. Kirker received unemployment benefits for the weeks of June 7, 2020, to August 15, 2020, schools were closed due to the regularly scheduled summer break, rather than the Covid-19 pandemic. Therefore, we find that Ms. Kirker did have a reasonable assurance of employment for the 2020-2021 school year pursuant to West Virginia Code § 21A-6-15(b)(2), and the circuit court erred in concluding otherwise. Thus, we reverse the circuit court's finding that Ms. Kirker did not have a reasonable assurance of employment for the 2020-2021 school year.

The circuit court also held that West Virginia Code § 21A-10-21 provided a two-year statute of limitations against collection of past paid benefits in this case. West Virginia Code § 21A-10-21 provides:

A person who, by reason of error, irrespective of the nature of said error, has received a sum as a benefit under this chapter, shall either have such sum deducted from a future benefit payable to him or shall repay to the commissioner the amount which he has received. Collection shall be made in the same manner as collection of past due payment. Provided, That such collection or deduction of benefits shall be barred after the expiration of two years.

The circuit court concluded that the statute of limitations set forth in West Virginia Code § 21A-10-21 limits the collection of erroneously paid benefits after two years, and thus applies in this case to preclude Workforce from collecting the benefits paid to Ms. Kirker. However, the Supreme Court has held that West Virginia Code § 21A-10-21 bars Workforce from collecting benefits paid to a claimant prior to two years before the date of the deputy's decision. *See Myers v. Outdoor Express, Inc.*, 235 W. Va. 457, 774 S.E.2d 538 (2015). Here, Ms. Kirker did not receive benefits prior to two years before August 11, 2020, the date of the initial deputy's decision. Ms. Kirker received benefits only between the weeks of July 18, 2020, and August 22, 2020. Thus, the circuit court erred in applying the two-year statute of limitations to this case. Accordingly, we reverse the circuit court's finding that the two-year statute of limitations found in West Virginia Code § 21A-10-21 applied to this case.

4

Next, we turn to Workforce's arguments regarding Executive Order Nos. 11-21 and 4-20.[3] These orders were created to assist those applying for unemployment benefits during the pandemic. Executive Order No. 11-21 directs Workforce not to collect overpayments in cases where the claimant was not fraudulent in applying for benefits. Governor Justice's Executive Order No. 11-21 provides, in part:

> The provisions of Chapter 21A, Article 10, Section 21 of the Code of West Virginia requiring the commissioner of Workforce West Virginia to collect non-fraudulent unemployment overpayments shall be suspended: provided: (a) the overpayment was received without fault on the part of the claimant; and (b) recoupment of the overpayment would be against equity and good conscience.

Further, Executive Order No. 4-20 directs Workforce to "ensure that individuals who, due to communicable diseases control measures related to COVID-19, are separated from employment, have had their hours of employment reduced, or are prevented from working, shall be eligible for unemployment benefits to the maximum extent permitted by federal law." Executive Order No. 4-20 defines communicable disease control measures as "includ[ing] quarantine or isolation directives or orders related to Covid-19, including orders that have been issued or may be issued from time to time relating to the closure or limitation of occupancy of certain types of businesses or facilities to limit the spread of Covid-19."

Regardless of Ms. Kirker's eligibility for unemployment benefits under West Virginia Code § 21A-6-15(b)(2), the Board did not consider Governor Justice's Executive Orders in its analysis. Thus, the Board did not properly analyze whether Workforce is precluded from collecting non-fraudulent overpayments. The record demonstrates that Ms. Kirker did not make any misrepresentations regarding her employment status in her application for unemployment benefits, and that Workforce approved her initial application for benefits prior to the deputy's decision. Ms. Kirker stated at the ALJ hearing that she was unsure as to when Nicholas County Schools would reopen in the fall due to the Covid-19 pandemic at the time that she applied for benefits. Further, the record provides that Ms. Kirker believed herself to be eligible for unemployment, and she did not present fraudulent information to Workforce in her application.

Based on the foregoing, we reverse the circuit court's finding that Ms. Kirker did not have a reasonable assurance of employment for the 2020-2021 school year, and we

---

[3] Under this assignment of error, Workforce makes several additional arguments that Executive Order No. 11-21 is inapplicable, as Ms. Kirker did not exhaust her administrative remedies before appealing the Board's decision. This issue was reserved for the Board as trier of fact and was not raised below, and thus cannot be raised for the first time on appeal. *See Noble*, 223 W. Va. at 821, 679 S.E.2d at 653.

reverse the circuit court's finding that West Virginia Code § 21A-10-21 applies to this case. Further, we remand this case to the Circuit Court of Kanawha County with directions for the Court to remand the matter to the Board for consideration and ruling on whether Workforce is able to seek repayment of Ms. Kirker's unemployment benefits in light of Governor Justice's Executive Order Nos. 11-21 and 4-20.

Accordingly, we reverse the Circuit Court of Kanawha County's August 25, 2022, "Order Reversing the Final Order of the Board of Review" and remand to the circuit court for entry of an order remanding the matter to the Board for further proceedings consistent with this decision.[4]

Reversed and Remanded.

**ISSUED:** September 5, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen

---

[4] Pursuant to West Virginia Code § 51-11-4 (2022), circuit courts retain jurisdiction over all administrative orders entered prior to June 30, 2022.